Philip A. IGNELZI, Individually, Philip A. Ignelzi and Marianne Ignelzi, Husband and Wife, Appellees

v.

OGG, CORDES, MURPHY AND IGNELZI, LLP; Gary J. Ogg, Samuel J. Cordes; Michael A. Murphy, Individually; Michael A. Murphy and Rebecca Murphy, Husband and Wife; Ogg, Murphy and Perkosky, LLP, John D. Perkosky; and Esquire Realty Associates, Appellants.

Superior Court of Pennsylvania.

Argued April 2, 2013.

Filed Oct. 7, 2013.

Reargument Denied Dec. 2, 2013.

---

Stephen R. McDonnell, West Chester, for appellants.

William M. Wycoff, Pittsburgh, for appellees.

BEFORE: BOWES, DONOHUE and MUNDY, JJ.

OPINION BY DONOHUE, J.:

Appellants, Ogg, Cordes, Murphy and Ignelzi, LLP ("OCMI"), Gary J. Ogg ("Ogg"), Samuel J. Cordes ("Cordes"), Michael A. Murphy ("Murphy") and Rebecca Murphy, husband and wife, Ogg Murphy and Perkosky, LLP ("OMP"), John D. Perkosky ("Perkosky") and Esquire Realty Associates ("Esquire") (collectively, "Appellants"), appeal from the trial court's July 25, 2012 order granting the petition of Appellees, Philip A. Ignelzi ("Ignelzi") and Marianne Ignelzi, to inspect the partner-

ship books of OCMI. Also pending is Appellees' motion to quash. We deny the motion to quash, affirm in part, and vacate in part.

The record reveals that Ignelzi was a partner of OCMI until its dissolution on December 31, 2009. Ignelzi withdrew from OCMI to join the bench of the Allegheny County Court of Common Pleas. Ignelzi assumed his role as judge on January 4, 2010, and thus is no longer a practicing attorney. *See* Code of Judicial Conduct, Canon 5(F) ("Judges should not practice law."). Two former partners of OCMI, Ogg and Murphy, formed OMP along with Perkosky.

For several years after the dissolution of OCMI, the parties attempted to negotiate the valuation and distribution of OCMI's assets. Unable to come to agreement, Ignelzi filed this lawsuit on October 31, 2011, naming each of the Appellants as a defendant.[1] Ignelzi's complaint alleges causes of action for, among other things, breach of contract, breach of fiduciary duty, unjust enrichment, and conversion. The complaint also alleges breach of the Uniform Partnership Act ("UPA"), 15 Pa. C.S.A. § 8301, *et seq.*, and demands an accounting of Ignelzi's interest in the OCMI partnership as of its dissolution.

Appellants filed preliminary objections on December 7, 2011, alleging failure to specify the nature of the agreements that underlie his complaint and improper pleading of Ignelzi's request for attorney's fees. The preliminary objections also demanded a more specific pleading. On July 16, 2012, the trial court granted the preliminary objections in part.

Ignelzi filed an amended complaint ten days later. While OCMI had no written partnership agreement, Ignelzi alleges

---

1. Ignelzi's lawsuit included a claim for partition of the former OCMI office building. The partition action is not pertinent to the issues on appeal.

that "each partner receives a minimum of $250,000.00 annually, with bonuses for initiation and production, and divides equally the remaining profits amongst the four partners." Amended Complaint, 7/26/12, at ¶ 20. Further, Ignelzi alleges that

> the OCMI partners had an agreement that a departing partner would be entitled to a withdrawal amount that is equal to the withdrawing partner's total interest in the firm, taking into account his capital contributions, his percentage of the advanced costs outstanding, and a proportional percentage of fees and revenues derived from pending cases at the time of the partner's withdrawal. The longstanding course of conduct of OCMI and its predecessor firms was that the value of the withdrawing partner's proportional share of the pending contingency fee matters was distributed 'in kind,' by the withdrawing partner taking his/her proportional share of those cases with him/her to a new law firm.

*Id*, at ¶ 23. Ignelzi also alleges that he is "entitled to a 25% interest in the proceeds of all active cases of OCMI at the time of Ignelzi's departure, as well as a 25% interest in the proceeds of all cases which Cordes took with him in his departure." *Id*, at ¶ 28. According to the Amended Complaint, Ignelzi's requests are in accord with "the longstanding course of conduct of OCMI with regard to withdrawing partners." *Id*. Appellants have not filed an answer to Ignelzi's amended complaint.

The instant appeal resulted from the trial court's order granting Ignelzi's March 29, 2012 petition pursuant to the § 8332 of the UPA[2] for access to the books of OCMI

and OMP. The petition alleges that an inspection of the partnership books is necessary to substantiate the recoveries Ignelzi seeks in his complaint.

Appellants opposed Ignelzi's petition, arguing that contingent fee matters that remained unresolved at the time of OCMI's dissolution had no value for purposes of Ignelzi's partnership interest. Appellants also argued that Ignelzi's proposed inspection of OMP's books would violate the confidentiality interests of OMP's current clients.

On July 25, 2012, the trial court issued a memorandum and order granting Ignelzi's petition in part.[3] The trial court ordered Appellants to comply with the following document requests:

> 8. Complete client list for all claims or cases that [OCMI], or any of its partners, had accepted, or had begun to review for acceptance, as of December 31, 2009.
>
> 9. All ledgers, books, records and client cards for any claims or cases that [OCMI], or any of its partners, had accepted, or had begun to review for acceptance, as of December 31, 2009, including but not limited to documentation of the present status of said claims or cases (whether settled, a verdict rendered, or representation was withdrawn).

Memorandum and Order, 7/25/12, at 3 (citing Exhibit A of Ignelzi's Petition for Access to Partnership Books and Records). Further, the trial court wrote:

> property or when circumstances render it just and reasonable. 15 Pa.C.S.A. § 8335(1), (4).

---

**2.** Section 8332 of the UPA provides that "every partner shall at all times have access to and may inspect and copy" all partnership books. 15 Pa.C.S.A. § 8332. Moreover, § 8335 of the UPA provides that a partner has the right to a formal account of a partnership's affairs if, among other things, he is wrongfully excluded from the partnership's

**3.** The trial court dated the order July 20, 2012, but the date stamp reflects that the trial court's memorandum and order were filed together on July 25, 2012.

The former OCMI files that have been transferred to OMP have become files of the successor partnership, OMP, and OMP's clients. Consequently, we will deny Ignelzi's request for access to the books and records of OMP.

*Id.* at 3–4. Ignelzi has not filed a cross appeal from the portion of the order denying access to OMP's books.

The heart of the parties' dispute in this case is Ignelzi's demand for his partnership share of any contingent fee cases that conclude after the dissolution of OCMI, as quoted above from ¶ 23 and ¶ 28 of the Amended Complaint. Ignelzi intends to use the requested documentation to substantiate the amounts he believes OCMI owes him from contingent fee cases that conclude post-dissolution. Appellants, as noted above, argue that cases not resolved as of OCMI's dissolution do not factor into Ignelzi's partnership interest.

Supplementing its order granting Ignelzi's petition, the trial court addressed this issue:

[A]bsent an agreement to the contrary, contingent fee cases are to be considered when determining the distribution to partners upon a partnership's dissolution. However, [ ... ] discrete values cannot be assigned to each of the pending cases upon the partnership's dissolution; rather, a partner is required to account for the pending contingent fee cases which that partner or that partner's new firm acquired, with [ ... ] appropriate credit and adjustments to account for post-dissolution events, results, and effort.

**Consequently, in the instant case, unless the partners have agreed otherwise, or there is agreement that the dissolution of OCMI was to provide a 'clean break,' the partners will be required to account for the contingent fee cases that were pending at OCMI upon dissolution and that were ac-** **quired by each partner from OCMI.** The partners will be winding up the partnership business during the pendency of the transferred contingent fee cases, and the partnership will not terminate and final distribution will not occur until all of the contingent fee cases have been pursued to conclusion or otherwise disposed of. Therefore, even though access to books of OMP will not be compelled at this point, the former partners of OCMI will be expected to provide the requisite accounting.

*Id.* at 4–5 (emphasis added). Thus, the trial court ordered Appellants to account for all contingent fee cases pending at the time of OCMI's dissolution, as those cases conclude, so that Ignelzi can calculate his partnership share of the contingent fee income.

Appellants filed this timely appeal from the trial court's July 25, 2012 memorandum and order. Ignelzi has filed a motion to quash this appeal as interlocutory.

■ We deny Ignelzi's motion to quash. Although Ignelzi filed his UPA petition while various causes of action against Appellants were pending, Ignelzi's right to inspect partnership books is statutory—per § 8332—and is independent of any pending cause of action. In this regard, the order before us is distinct from an interlocutory discovery order. Our Supreme Court has written as follows:

The question as to whether a complainant in a bill in equity for an account is entitled to a decree for an accounting [ ... ] has nothing to do with what will ultimately be shown by the account. Once a plaintiff has made clear his right to an account, the decree for an accounting necessarily follows; the plaintiff in this threshold inquiry is not called upon to establish the amount due, only the right to have an investigation of what is due. [ ... ]

Upon an application for an account, the only question to be considered is whether the account shall be taken—plaintiff's right to the accounting and defendant's liability to render the account[.]

*Underdown v. Underdown*, 270 Pa. 229, 230–31, 113 A. 192, 192 (1921). Here, as in *Underdown*, Ignelzi seeks information relevant to establish what amount of money he is due. Ignelzi's right to an inspection of OCMI's partnership books and an accounting of cases resolved post-dissolution exists regardless of whether he can ultimately recover. Indeed, Ignelzi could have sought an inspection of partnership books even if no cause of action was pending or intended. The order in *Underdown*—which established only the plaintiff's right to an accounting—was final and appealable. We discern no reason to treat the instant order any differently.

■ Turning to the merits, Appellants argue that the trial court erred in the breadth of its order for an accounting because Ignelzi is not entitled to a share of any contingent fees earned subsequent to OCMI's dissolution and because compliance will violate client confidentiality. Appellants' Brief at 1. Since this case presents questions of law, we apply a *de novo* standard of review. *Boatin v. Miller*, 955 A.2d 424, 427 (Pa.Super.2008).

Preliminarily, we observe that Appellants do not challenge the portion of the trial court's order, quoted above, granting Ignelzi's request to inspect OCMI's partnership books as set forth in paragraphs 8 and 9 of Exhibit A to Ignelzi's petition. We therefore affirm that portion of the order.

The remainder of the trial court's order, which requires Ignelzi's former OCMI partners to account for post-dissolution contingent fees when realized, poses greater difficulties. Ignelzi alleged the existence of an agreement that would entitle him to the accounting. The trial court ordered the accounting, assuming that no agreement to the contrary existed, as quoted above. Appellants, though they have not yet filed an answer, dispute the existence of any agreement or course of conduct whereby they would have to account for former OCMI contingent fee cases.

While this appeal was pending, an *en banc* panel of this Court decided *Huber v. Etkin*, 58 A.3d 772 (Pa.Super.2012) (*en banc*), which also involved a dissolving law partnership dispute. *Huber* was filed on November 26, 2012, and this Court afforded the parties an opportunity to file supplemental briefs addressing *Huber's* application to the case at bar. In *Huber*, former law partners disputed the effect of post-dissolution contingency fees on the value of a dissolving partnership. *Id.* at 774. One partner argued that partnership assets should be valued at the date of dissolution, and the other argued that contingent fees realized after dissolution should be subject to an accounting. *Id.* The trial court held the latter. *Id.* at 775. The appellant argued that the trial court erred, and that the appellee was at most entitled to *quantum meruit* for the value of his pre-dissolution services. *Id.*

This Court first noted that the UPA controls dissolution of a partnership where no partnership agreement exists or where an agreement is silent on that point. *Id.* at 777.[4] Further, a partnership does not terminate upon dissolution, but "continues until the affairs of the business are wound

---

4. The partners in *Huber* did not execute a written partnership agreement and had no course of conduct governing the distribution of post-dissolution contingent fees. Since Ig-nelzi has alleged an agreed upon course of conduct that governs post-dissolution contingent fees, his reliance on *Huber* is obviously misplaced.

up." *Id.* (citing 15 Pa.C.S.A. § 8352).[5] The *Huber* Court reasoned that former law firm partners, in their post-dissolution handling of contingent fee cases, continue to owe each other a fiduciary duty:

> The contingency fees cases that were brought into E & H during the partnership were obtained with partnership resources. Therefore, they were partnership assets. It does not matter whether the contingency fees were realized at the time of dissolution, because the partnership business had yet to wind up. During that winding up, the partners continued to owe one another a fiduciary duty.

*Id.* at 780. Thus, the *Huber* Court concluded that the former law partners would have to account to one another for post-dissolution contingent fees.

In reaching that conclusion, this Court analyzed two earlier cases, neither of which addressed a dispute between former law partners. In *Lamparski v. Sikov, Lamparski & Woncheck, P.C.*, 384 Pa.Super. 491, 559 A.2d 544 (1989), *appeal denied*, 524 Pa. 609, 569 A.2d 1368 (1990), a deceased shareholder's estate filed suit to determine the value of the decedent's shares in the law firm, a professional corporation. *Id.* at 545. At issue was the value of contingency fee cases that were referred by Sikov, Lamparski & Woncheck ("SLW") to another law firm for which SLW would receive a referral fee upon settlement of the cases. The *Lamparski* Court reasoned: "The very nature of contingent fees is their uncertainty of return and consequently we believe that they have no place in the valuation of [the firm] as of [the date of the shareholder's death]." *Id.* at 548.[6] Thus, this Court in

*Lamparski* held that the deceased shareholder's estate did not include the value of unresolved contingent fee cases, as no value could be assigned to those cases prior to their resolution. *Id.*

Likewise, in *Beasley v. Beasley*, 359 Pa.Super. 20, 518 A.2d 545 (1986), *appeal denied*, 516 Pa. 631, 533 A.2d 90 (1987), the appellant wife argued that her husband's sole proprietorship law firm was subject to valuation and inclusion in an equitable distribution of marital property. *Id.* at 546. Here also, this Court considered it impossible to estimate the value of pending contingent fee cases for purposes of equitable distribution:

> In cases where there is a contingent fee arrangement, the value of work completed, or work done and the costs advanced, is absorbed by the sole proprietor and cannot be recouped until the case is completed. [ ... ] It is tenuous and risky to attempt to evaluate the likely return on contingent fees and as such, no value can be placed on them for purposes of equitable distribution.

*Id.* at 554.

This Court distinguished *Beasley* and *Lamparski* as cases that do not speak to the dissolution of a partnership:

> Both *Lamparski* and *Beasley* focus on the value of contingency fees at a particular date: date of death and date of separation/trial, respectively. Their holdings that contingency fees are too speculative as of the date of valuation make sense when the court must determine value on a specific date and when the contingency fees in question are still unresolved. However, neither case speaks to the dissolution of a partner-

---

**5.** "On dissolution, the partnership is not terminated but continues until the winding up of partnership affairs is completed." 15 Pa. C.S.A. § 8352.

**6.** Pursuant to then-existing inheritance and estate tax law, each item in a decedent's estate had to be valued as of the date of the decedent's death. 72 Pa.C.S.A. § 1721(a), repealed 1991 Aug. 4, PL 97 No. 22, effective 60 days.

ship, which, under the UPA, is not bound to a specific date in the determination of value. The UPA specifically contemplates a winding up period during which the contingency fees can be resolved and become susceptible to valuation. Instantly, the contingency fees were resolved by the time of trial and thus could be valued. Therefore, *Lamparski* and *Beasley* do not apply to the current situation[.]

*Huber*, 58 A.3d at 779.

We conclude that *Huber, Lamparski,* and *Beasley* do not control the case on appeal. Pursuant to *Huber,* the UPA requires former law partners to account to one another for post-dissolution contingent fees if no agreement governs that issue. Ignelzi has alleged the existence of an agreement that governs post-dissolution contingent fees. If he is correct, then the terms of the agreement, rather than *Huber's* analysis of the UPA, will govern the outcome of this case. Unfortunately, the parties have yet to litigate the existence and contours of any agreement or course of conduct that governs this dispute. As noted above, the pleadings have yet to close. Recognizing this, the trial court couched its order in precatory language directing Appellants to account for post-dissolution fees "unless the partners have agreed otherwise, or there is agreement that the dissolution of OCMI was to provide a 'clean break[.]' Memorandum and Order, 7/25/12, at 4. The proper course of

action would have been to permit the parties to litigate this issue, and then, if necessary, issue an order compelling an accounting."

Furthermore, we conclude that *Huber* does not govern this case because the former law partners in *Huber* continued to practice law. As a sitting trial court judge, Ignelzi is no longer a licensed, practicing attorney. This is potentially significant because a Pennsylvania Rule of Professional Conduct governing lawyers prohibits fee sharing between a lawyer and a non-lawyer. Pennsylvania Rule of Professional Conduct 5.4(a), Professional Independence of a Lawyer ("A lawyer or law firm shall not share legal fees with a nonlawyer[.]") [7] (hereinafter Rule 5.4).

Lawyers in private practice routinely become judges and payment of compensation commonly remains outstanding after the former lawyer takes the bench. Not surprisingly, good lawyers and judges have attempted to discern the appropriate balance between lawyer ethics and the economic realities of a new judge winding up the practice of law. The Ethics Committee of the Pennsylvania Conference of State Trial Judges ("Ethics Committee") has addressed this issue in informal opinions.[8]

For example, the Ethics Committee has addressed a judge's commission for generating a contingent fee matter prior to joining the bench:

---

7. Rule 5.4(a) is subject to exceptions not applicable here. Rule 5.4(a)(1–5).

8. The Ethics Committee's informal opinions are available at http://ethics.pacourts.us. The Ethics Committee "is designated [by the Pennsylvania Supreme Court] as the approved body to render advisory opinions regarding ethical concerns involving judges, justices and other judicial officers[.]" *See* Note to Code of Judicial Conduct, Reliance on Advisory Opinions. Judicial officers who take action in reliance on opinions issued by

the Ethics Committee are not *per se* protected from having discipline imposed on them by the Judicial Conduct Board, the Court of Judicial Discipline or the Supreme Court. However, reliance on such opinions must be taken into consideration in decisions regarding discipline. *Id.* We look to these informal opinions because we believe they represent longstanding accepted standards in the legal community for handling fee sharing between practicing lawyers and judges who formerly practiced law and handled client matters.

A judge may receive a commission from the judge's former law firm for generating a personal injury matter while the judge was a lawyer pursuant to a law firm partnership agreement that provided for the payment of a commission to be paid to the generating attorney at the conclusion of the case and upon receipt of funds. If the agreement was entered into before any consideration that the judge would become a judge, the agreement establishes the fact and basis upon which the commission would be determined, and the commission would be payable to the judge regardless of the reason for leaving the firm, then the judge may accept it. On the other hand if these assumptions are not correct, the situation is akin to receiving payment for work on a contingency matter that was pending at the time the judge assumed the bench, and, in that case, the concern would be that the judge would be receiving compensation from a law firm disproportionate to the work the judge performed. In that case the division of fees must reasonably reflect the amount of work the judge did on the case. Two approaches are generally accepted. The judge may estimate a fixed percentage at the time the case is transferred to successor counsel based on work already performed and estimated future services and enter into an agreement with successor counsel on that basis or the judge may allow successor counsel to make the pro rata determination at the conclusion of the matter. In either case the entire fee must be reasonable and the judge's portion must be determined on the basis of actual work actually performed before taking the bench. Fees collected after taking office should be reported on the Supreme Court of Pennsylvania statement of financial interest form.

Ethics Committee, Informal Opinion 6/17a/10.[9]

We are presently unable to assess the import of Rule 5.4 and the attendant ethical considerations because the record is underdeveloped. The parties' agreement or course of conduct, if one exists, may or may not comport with Rule 5.4. We recognize that this Court and the trial court have no authority to enforce the Rules of Professional Conduct. On the other hand, we lack authority to override the Rules of Professional Conduct under the guise of interpreting civil law. Whatever the outcome on remand, the trial court must consider the import of Rule 5.4.[10] For these

---

9. The date appears as 6/17a/10 to distinguish it from another informal opinion issued the same day. The Ethics Committee has issued other informal opinions on this subject matter. *See* Informal Opinion 10/14/99 (judge-elect may transfer files with client consent and may receive fees, including a portion of contingent fees, for work performed prior to joining the bench); Informal Opinion 8/13/07 (judicial candidate may become of counsel to a firm, leave his files with that firm, and receive periodic payments for matters that were pending prior to his joining the bench); Informal Opinion 12/7/9 (sale of law practice by a lawyer elected to the bench; note that some opinions on the website, including this one from 2009, use a single digit to represent the year).

10. The learned Concurring Judge writes that our discussion of Rule 5.4 is inapt because it addresses fee sharing rather than division of equity among former partners. Concurring Opinion, at 1120. This is a distinction without a difference as applied to a partnership, such as OCMI, whose value depends entirely on the realization of contingent fees. Indeed, in *Huber*, the determination of the partner's equity in the dissolved firm was based upon contingency fees generated from individual cases, not an aggregate analysis of the revenue and expenses of the firm to determine the distributable partnership profit. *See Huber*, 58 A.3d at 774.

Moreover, as set forth in the main text, Rule 5.4 speaks more directly to this appeal than does *Huber*, as Ignelzi—who no longer is a

additional reasons, the trial court acted prematurely in ordering an accounting prior to any litigation of disputed facts.

To summarize, the trial court granted Ignelzi's petition to inspect OCMI's books and ordered that Ignelzi's former OCMI partners would have to account for contingent fee cases transferred from OCMI as those cases resolved. Based on the foregoing analysis, we can affirm the trial court's order only insofar as it granted Ignelzi's petition for an inspection of OCMI's books pursuant to § 8332. Ignelzi's statutory right to an inspection of OCMI's books is not in dispute, and Appellants do not seriously contest that portion of the trial court's order.

To the extent that the trial court's order will compel Appellants to account for contingent fee cases that OCMI transferred to OMP or to Cordes, we vacate the order. The trial court erred in entering that order prior to litigation of the underlying facts resolving the parameters of the pre-existing partnership agreement or course of

conduct between OCMI and prior departing law partners.

Order affirmed in part and vacated in part. Motion to quash denied. Jurisdiction relinquished.

MUNDY, J. files a Concurring Statement.

## CONCURRING STATEMENT BY MUNDY, J.:

I agree that the trial court's July 25, 2012 inspection order, entered pursuant to 15 Pa.C.S.A. § 8332, is appealable. I further agree with the affirmance of the trial court's order relative to inspection of OCMI's partnership books as described in paragraphs eight and nine of Ignelzi's petition. Additionally, I agree with the Majority that the trial court erred in its order directing an accounting of post-dissolution contingent fees based on whether or not an agreement existed. Specifically, I agree with the Majority that, "[t]he proper course of action would have been to permit the parties to litigate this issue, and then, if necessary, issue an order compelling an

---

practicing lawyer—is seeking to share contingent fees with former partners who continue to practice law. The Concurring Judge's distinction of the Ethics Committee's opinion is similarly problematic, in that payment of a commission for generating a contingent fee case is plainly a form of fee sharing.

We further disagree that our discussion of Rule 5.4 is unnecessary, as we cannot ignore the import of a Rule of Professional Conduct that is directly relevant to the matter before us. *See, e.g., Vertical Resources, Inc. v. Bramlett*, 837 A.2d 1193 (Pa.Super.2003) (holding that the trial court erred in disqualifying an attorney for a violation of Pennsylvania Rule of Professional Conduct 4.2); *see also Huber*, 58 A.3d at 783–85 (Mundy, J. dissenting). We observe that the parties thoroughly analyzed the applicability of *Huber* in their supplemental briefs. Ignelzi addressed Rule 5.4 and various Ethics Committee opinions in his supplemental brief.

Finally, as to the Concurring Judge's hypothetical questions (Concurring Opinion, at n.

1), the answer to each is the same: execute a written partnership agreement. Law firm partners can avoid the uncertainty of litigation by agreeing in advance how to wind up the partnership consistent with any applicable ethical considerations. The mere existence of an advance agreement may obviate any ethical problem, as set forth in Informal Opinion 6/17a/10. Rule 5.4's limitation on fee sharing with nonlawyers is intended to protect the lawyer's professional independence of judgment in the client representation. Rule 5.4, explanatory comment, [1]. A pre-dissolution agreement on how fees will be distributed obviates the concern that a departing partner who no longer holds a license to practice law will have a say in the outcome of a case. The UPA governs many forms of partnerships other than law firms. Its applicability to a law firm does not obviate the lawyers' responsibility to comply with the Rules of Professional Conduct in the event of dissolution.

accounting." Majority Opinion at 1119. Accordingly, I join those portions of the Majority opinion.

I write separately to distance myself from the Majority's discussion distinguishing the instant case from the case of *Huber v. Etkin*, 58 A.3d 772 (Pa.Super.2012) (*en banc*), *appeal denied*, 68 A.3d 909 (Pa.2013), on the basis that Ignelzi departed the partnership to ascend to the bench and is a current sitting trial judge. I deem this discussion dicta and unnecessary to our disposition of this appeal.

Further, I am skeptical that Pennsylvania Rule of Professional Conduct 5.4 provides a basis for distinguishing *Huber's* application if the trial court determines no agreement, express or by course of conduct, exists in this case, or provides a basis to alter any agreement found by the trial court to exist. Rule 5.4 addresses fee sharing, which is a form of case specific compensation for consideration, and not the division of a dissolved partnership's equity, which includes unrealized contingent fees, among the former partners. Similarly, the Ethics Committee, Informal Opinion 6/17a/10, cited by the Majority addresses receipt of a commission by a judge and not the division of a partnership's equity, and is therefore inapt.[1]

Accordingly, I do not join the portion of the Majority Opinion addressing the potential impact of Rule 5.4 on the trial court's determinations on remand. As I deem said discussion dicta, I concur in the Majority's disposition of this appeal.

---

1. I do not contend that reference to rules of professional conduct is, as a general proposition, unwarranted. However, unlike my position expressed in *Huber*, such reference is unnecessary here, where the possible existence and terms of any agreement has yet to be determined. *See Huber, supra* at 783–785 (Mundy, J., dissenting). Further, the Majority's interpretation of Rule 5.4 creates implications in circumstances where a partner in a law practice retires, or allows his professional license to lapse for health or personal reasons. In each instance, is the former partner precluded from sharing in the equity of the partner's former firm generated from contingent fees because the departing partner cannot practice law? Is a departing partner's claim to a share of his partnership's assets to be contingent on his or her continued practice of law? Additionally, the Uniform Partnership Act references a winding up period to complete partnership affairs. 15 Pa.C.S.A. § 8352. Is that provision obviated relative to contingent fees based on the practicing status of the former law partner?