J-A01038-17

2017 PA Super 111

PHILIP A. IGNELZI, INDIVIDUALLY,  :  IN THE SUPERIOR COURT OF
PHILIP A. IGNELZI AND MARIANNE  :  PENNSYLVANIA
IGNELZI, HUSBAND AND WIFE  :
 :
 v.  :
 :
OGG, CORDES, MURPHY AND IGNELZI,  :
LLP; GARY J. OGG; SAMUEL J.  :
CORDES; MICHAEL A. MURPHY,  :
INDIVIDUALLY; MICHAEL A. MURPHY  :
AND REBECCA MURPHY, HUSBAND  :
AND WIFE; OGG, MURPHY, AND  :
PERKOSKY, LLP; JOHN D. PERKOSKY;  :
AND ESQUIRE REALTY ASSOCIATES  :
 :
APPEAL OF: GARY J. OGG, MICHAEL A.  :
MURPHY AND REBECCA MURPHY, OGG,  :
MURPHY AND PERKOSKY, LLP, AND  :
JOHN D. PERKOSKY  :  No. 971 WDA 2016

Appeal from the Order Entered May 20, 2016,
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s): GD 11-022449

BEFORE:   FORD ELLIOTT, P.J.E., BOWES, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:        **FILED APRIL 19, 2017**

Gary J. Ogg, Michael A. Murphy, Rebecca Murphy, John D. Perkosky,

and Ogg, Murphy, and Perkosky, LLP (OMP) (collectively, Appellants) appeal

from the discovery order entered May 20, 2016, which granted in part and

denied in part their motion for protective order.[1]  After review, we quash this

appeal.

---

[1] After recusal of the entire bench of the Allegheny County Court of Common
Pleas, Senior Judge Eugene E. Fike, II, was appointed to hear this case.

*Retired Senior Judge assigned to the Superior Court.

This litigation arises from a dispute among Phillip A. Ignelzi, his former law firm, Ogg, Cordes, Murphy, and Ignelzi, LLP (OCMI), and partners, Ogg, Cordes, and Michael Murphy. In November of 2009, Ignelzi was elected as a judge of the Court of Common Pleas of Allegheny County. Accordingly, he could no longer be a partner of OCMI and the law firm began dissolution.

Ogg, Murphy, and an associate, Perkosky, formed a new law firm, OMP. Cordes formed his own, separate law firm. The parties attempted to negotiate a settlement as to what the former partners would pay Ignelzi, but they were unable to reach an amicable resolution. Thus, on October 31, 2011, Ignelzi filed the instant lawsuit alleging, *inter alia*, breach of contract and violations of the Uniform Partnership Act (UPA), 15 Pa.C.S. §§ 8301-8365.[2]

As this Court pointed out previously, "[t]he heart of the parties' dispute in this case is Ignelzi's demand for his partnership share of any contingent fee cases that conclude after the dissolution of OCMI." *Ignelzi v. Ogg, Cordes, Murphy and Ignelzi, LLP*, 78 A.3d 1111, 1114 (Pa. Super. 2013) (*Ignelzi I*).[3] Ignelzi sought discovery and requested the following, in relevant part.

---

[2] This version of the UPA was repealed, effective February 21, 2017, and replaced by 15 Pa.C.S. §§ 8411-8486.

[3] This Court first considered this case after the trial court granted Ignelzi's March 29, 2012 petition filed pursuant to section 8332 of the UPA for access to accounting information from both OCMI and OMP. This Court held that "the trial court erred in entering [an] order [permitting access to ledgers,

   1. Client lists for all claims or cases that the partnership of [OCMI], or any of its partners, had accepted, or had begun to review for acceptance, as of December 31, 2009.

   2. Ledgers, books, records and client cards for any claims or cases that the partnership of [OCMI] or any of its partners, had accepted or begun to review for acceptance, as of December 31, 2009.

   3. Bookkeepers' summaries for 2006 through 2009.

Ignelzi's Brief at Exhibit A (Plaintiffs' First Request for Production of Documents at 6-7).[4]

In response to the discovery request, Appellants filed a motion for protective order.  In that motion, Appellants argued that based upon this Court's prior rulings, Ignelzi was not entitled to the aforementioned information.  Specifically, they argued that this Court's "December 2014 [order] essentially sets up a date-certain valuation being the date [Ignelzi]

---

books, records, and client cards for cases accepted by OCMI or any partners prior to December 31, 2009,] prior to litigation of the underlying facts resolving the parameters of the pre-existing partnership agreement or course of conduct between OCMI and prior departing law partners." ***Ignelzi I***, 78 A.3d at 1115.

After that appeal, the trial court concluded that the partners did not have an express agreement about how shares for contingent fee cases were to be distributed in the event a partner left the firm.  Thus, the trial court limited Ignelzi's claims accordingly, and Ignelzi's claim for a share of these cases was limited to his action under the UPA. ***See*** Order, 12/23/2014.

[4] It does not appear that the First Request for Production of Documents is contained in the certified record on appeal.  "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006).

left OCMI." Motion for Protective Order, 9/1/2015, at ¶ 18.  Appellants went

on to argue that based on prior holdings of this Court,

> the value of work performed by Judge Ignelzi had no
> ascertainable value as of that date and discovery related to such
> matters is not warranted as it is overly broad, unduly
> burdensome, not likely to lead to discoverable material, violated
> the law of the case and would compel OMP to violate the Rules of
> Ethics.  Further given the confidential client information at risk,
> [Appellants] simply cannot turn over all files as [Ignelzi's]
> pending discovery requests demand.

***Id***. at ¶ 20.[5]

After argument, the trial court issued a ruling which granted in part

and denied in part Appellants' motion for protective order.  The order

provided:

> It is ORDERED that the motion[ is] granted in part and
> denied in part as follows:
>
> 1.  The motion[ is] denied to the extent that, to the extent not
> provided previously, Ogg, Murphy and Cordes shall produce to []
> Ignelzi, the documents identified in paragraphs [1 and 3], within
> 30 days after the date this order is entered.
>
> 2.   Having concluded that, because of the breadth and all-
> encompassing nature of the request contained in paragraph 2 [],
> the motion[ is] granted with respect to the documents requested
> in paragraph 2 [].
>
> 3.  To ensure confidentiality, Ignelzi shall redact the documents
> to be produced pursuant to this order before being shared with

---

[5] We are compelled to point out that our review of ***Ignelzi I*** does not reveal any language by this Court that supports Appellants' interpretation of that opinion.  In fact, the opinion goes out of its way to acknowledge that "[l]awyers in private practice routinely become judges and payment of compensation commonly remains outstanding after the former lawyer takes the bench." ***Ignelzi I***, 78 A.3d at 1117.  This Court went on to cite an Ethics Opinion discussing how such a matter should be handled.

counsel. Ignelzi shall assign a number to each client and substitute the number in place of the client's name, with the number to be used in place of the client's name in further proceedings. All documents and information produced or disclosed shall remain confidential, shall be used only as necessary in this litigation, will not be filed of record without prior court approval, and will be disclosed only to Ignelzi, Cordes, Murphy and their counsel, and to no other person without prior court approval.

4. The court is of the opinion that this order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this order will materially advance the ultimate termination of the matter.

Order, 5/20/2016 (unnecessary capitalization omitted). Moreover, the trial court pointed out that with respect to the information in paragraph 2 of the discovery request, it is denied "without prejudice to future discovery that appropriately narrows the inquiry to coincide with the parameters of permissible discovery." Trial Court Opinion, 5/20/2016, at 15.

On June 22, 2016, Appellants filed a notice of appeal.[6] Before we reach the substantive issues in this appeal, we consider the appealability of

---

[6] Appellants' appeal was due to be filed in 30 days from the entry of the order, or no later than June 20, 2016. **See** Pa.R.A.P. 903(a). Therefore, this appeal, filed on June 22, 2016, appears to be untimely. However,

Rule of Appellate Procedure 108(b) designates the date of entry of an order as "the day on which the clerk makes the notation in the docket that **notice** of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b) (emphasis added). Our Supreme Court has held that "an order is not appealable until it is entered on the docket **with the required notation that appropriate notice has been given**." *Frazier v. City of Philadelphia*, [] 735 A.2d 113, 115 ([Pa.] 1999) (emphasis added). Where there is no indication on the docket

- 5 -

the May 20, 2016 order. *See In re Miscin*, 885 A.2d 558, 561 (Pa. Super. 2005) ("We may examine the issue of appealability *sua sponte* because it affects the Court's jurisdiction over the case.").[7]

This Court has jurisdiction over final orders. The definition of a final order is provided in Rule 341 of the Pennsylvania Rules of Appellate Procedure. "Rule 341 is fundamental to the exercise of jurisdiction by this court." *Prelude, Inc. v. Jorcyk*, 695 A.2d 422, 424 (Pa. Super. 1997) (*en banc*). Rule 341 provides, in relevant part, as follows.

> **(b)** **Definition of final order**.--A final order is any order that:
>
> (1)   disposes of all claims and of all parties; or
>
> (2)   RESCINDED
>
> (3)   is entered as a final order pursuant to paragraph (c) of this rule.

---

> that Rule 236(b) notice has been given, then the appeal period has not started to run. *Id*. [] at 115. Our Supreme Court has expressly held that this is a bright-line rule, to be interpreted strictly. That the appealing party did indeed receive notice does not alter the rule that the 30–day appeal period is not triggered until the clerk makes a notation on the docket that notice of entry of the order has been given.

*In re L.M.*, 923 A.2d 505, 508–09 (Pa. Super. 2007) (emphasis in original). Here, there is no notation on the docket that the Rule 236(b) notice was ever given. Accordingly, the appeal period never started to run, and therefore this appeal was not filed untimely. *See also Vertical Res., Inc. v. Bramlett*, 837 A.2d 1193, 1199 (Pa. Super. 2003) (holding that even where Rule 236(b) notice was never sent, "in the interest of judicial economy, we will regard as done what should have been done and consider the notice as having been mailed").

[7] Moreover, Ignelzi has raised the issue of the appealability of this order.

(c)  **Determination of finality**.--When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.

Pa.R.A.P. 341.  **See also** 42 Pa.C.S. § 742 ("The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas….").

Instantly, the trial court added language in paragraph 4 of its order that is consistent with Pa.R.A.P. 341(c).  However, this Court has held that "Rule 341(c) certification, under the clear language of the rule, is available only to 'final' orders disposing of one but fewer than all parties or causes of action." **F.D.P. v. Ferrara**, 804 A.2d 1221, 1226 (Pa. Super. 2002). "[C]ertification under Rule 341(c) was designed to allow for an immediate appeal of a 'final' order relating to [fewer] than all parties or [fewer] than all claims.  In other words, it applies to orders dismissing parties and dismissing claims." **Id**. at 1226-27.

The discovery order in this case, which merely granted in part and denied in part Appellants' motion for a protective order, dismissed neither a party nor a claim.  Accordingly, despite the trial court's Rule 341(c) certification, this order is not appealable under the clear language of the

- 7 -

rule. Thus, we do not have jurisdiction to entertain this appeal pursuant to Pa.R.A.P. 341.

We now consider other potential bases for this Court's jurisdiction.[8] First, we examine our jurisdiction pursuant to Pa.R.A.P. 313, which governs collateral orders. In doing so, we point out that "This Court's review … is plenary, since determining the appropriate boundaries of collateral order jurisdiction entails resolution of a question of law." ***Pridgen v. Parker Hannifin Corp.***, 588 Pa. 405, 419 (2006).

> "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). "[T]he collateral order doctrine is a specialized, practical application of the general rule that only final orders are appealable as of right." ***Melvin v. Doe***, [] 836 A.2d 42, 46–47 ([Pa.] 2003). "Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule." ***Id***. at 47. "To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral." ***Id***.

***Meyer-Chatfield Corp. v. Bank Fin. Servs. Grp.***, 143 A.3d 930, 936 (Pa. Super. 2016) (some citations omitted). "[W]here an order satisfies Rule 313's three-pronged test, we may exercise appellate jurisdiction where the order is not final. If the test is not met, however, and in the absence of another exception to the final order rule, we have no jurisdiction to consider

---

[8] ***See*** Appellants' Brief at 1 (citing Pa.R.A.P. 313 (collateral orders) and Pa.R.A.P. 1311 (interlocutory appeals by permission)).

an appeal of such an order." ***Rae v. Pennsylvania Funeral Directors Ass'n***, 977 A.2d 1121, 1125 (Pa. 2009).

"Generally, discovery orders are deemed interlocutory and not immediately appealable, because they do not dispose of the litigation. On the other hand, discovery orders requiring disclosure of privileged materials generally are appealable under Rule 313 **where the issue of privilege is separable from the underlying issue**." ***Meyer-Chatfield***, 143 A.3d at 936 (emphasis added).

> As to separability, [the Supreme] Court has adopted a practical analysis recognizing that some potential interrelationship between merits issues and the question sought to be raised in the interlocutory appeal is tolerable. [] [***See***] ***Johnson v. Jones***, 515 U.S. [304,] 314 [(1995)] [] (explaining that a claim is sufficiently separate from the underlying issues for purposes of collateral order review if it "is conceptually distinct from the merits of plaintiff's claim," that is, where, even if "practically intertwined with the merits, [it] nonetheless raises a question that is significantly different from the questions underlying plaintiff's claim on the merits" (citations omitted)).

***Pridgen v. Parker Hannifin Corp.***, 905 A.2d 422, 433 (Pa. 2006). We have held that "[a]n order is not separable if the matter being reviewed has the potential to resolve an issue in the case." ***Jacksonian v. Temple Univ. Health Sys. Found.***, 862 A.2d 1275, 1279 (Pa. Super. 2004).

Instantly, Appellants argue that "the dispositive question [in this appeal] is whether the contents of confidential, privileged legal files in which the clients of [OMP] and or [Cordes] have a proprietary interest should be disclosed, without their consent or even notice." Appellants' Reply Brief at 3

(emphasis removed). According to Appellants, "if the [o]rder is not reversed, [Ignelzi] will receive unfettered access to files of hundreds of [Appellants'] clients, the overwhelming majority of whom [Ignelzi] has never had any involvement."[9] *Id*. at 4.

In other words, Appellants disagree with what they see as the underlying premise of the trial court's order, that Ignelzi may eventually be entitled to a recovery on contingent fee cases that were not resolved prior to Ignelzi's departure. In fact, Appellants devote the majority of their brief on appeal to arguing why Ignelzi is not entitled to a recovery in this case, not arguing why Ignelzi should not be entitled to review portions of confidential client files.

Appellants argue that "an interest in a contingent matter must [be] calculated on a specific date." Appellants' Brief at 19. Appellants suggest that based on this interpretation of the law, if a contingent fee matter had not been resolved prior to Ignelzi's departure in December 2009, its value to him was zero and has no effect on a partnership valuation. Additionally, Appellants argue that as a matter of public policy, a partner of a law firm who becomes a judge should not be entitled to collect a partnership interest

---

[9] It should be noted that Appellants have not even been ordered to turn over these files. *See* Trial Court Opinion, 5/20/2016, at 15. However, the trial court left the door open to Appellants turning over at least some portions of these files if Ignelzi "appropriately narrows the inquiry." *Id*.

from contingent matters that were not resolved prior to his departure. *Id*. at 40-46.

Our conclusion with respect to any or all of the aforementioned issues has the potential to resolve the primary issue in the case, whether Ignelzi is entitled to "his partnership share of any contingent fee cases that conclude after the dissolution of OCMI." *See Ignelzi I*, 78 A.3d at 1114. If we were to determine that the contingency fee cases that were not resolved had no value in December of 2009, then Ignelzi would not be entitled to any money and the case would end. In addition, if we were to determine that a sitting judge is not entitled to collect money from his or her former law firm, again, Appellants could not be ordered to pay Ignelzi any amount, and the case would end. Because Appellants are trying to litigate these issues through an appeal from a discovery order, we hold that this order does not satisfy the separability prong of the collateral order doctrine and we lack jurisdiction to entertain this appeal.[10]

---

[10] Appellants assert several additional bases for why Ignelzi is not entitled to this information, and eventually a recovery in this matter. Appellants' Brief at 23-39. First, Appellants invoke several Rules of Professional Conduct: Pa.R.P.C. 5.4 (regarding sharing fees with a nonlawyer), 1.5 (regarding lawyers dividing fees with other lawyers), and 1.6 (regarding confidentiality). However, "the Supreme Court has held that the Rules of Professional Conduct do not have the effect of substantive law but, instead, are to be employed in disciplinary proceedings." *In re Adoption of M.M.H.*, 981 A.2d 261, 272 (Pa. Super. 2009). "They do not govern or affect judicial application of either the attorney-client or work product privilege." *In re Estate of Wood*, 818 A.2d 568, 573 (Pa. Super. 2003).

Even if we were to conclude that this order is separable, this matter would still not be ripe for our review. In ***T.M. v. Elwyn***, 950 A.2d 1050 (Pa. Super. 2008), this Court set forth the requirements for a party asserting the attorney-client privilege as a basis to withhold discovery. In that case, the plaintiff was a student at a school for students with mental health and behavioral issues. The plaintiff filed a lawsuit against the school, asserting that a school counselor sexually assaulted her. The plaintiff filed requests for admissions and production of documents for information about other students who had sued the school. The school objected on the basis that the information and documents requested were privileged. After motions practice, the trial court ordered that the school must fully answer, without objection, the plaintiff's requests. The school filed a notice of appeal.

On appeal, the school argued that production of this information is "in contravention of evidentiary privileges, including the attorney-client privilege, and in violation of various statutes." ***Id***. at 1058. The plaintiff

---

In addition, Appellants reference Code of Judicial Conduct: 5(C) (Financial Activities), 5(D) (Fiduciary Activities), and 5(F) (Practice of Law). Appellants' Brief at 23-24. We note that Pennsylvania has only Canons 1 through 4. It appears that Appellants are referring to Canons 3.11 (Financial Activities), 3.8 (Fiduciary Activities), and 3.10 (Practice of Law), respectively. In any event, the Code of Judicial Conduct "is not designed or intended as a basis for civil or criminal liability. Neither is it intended to be the basis for litigants to seek collateral remedies against each other or to obtain tactical advantages in proceedings before a court." Pa. Code of Judicial Conduct, Preamble ¶ 7. Based on the foregoing, we fail to see how either set of rules governs our resolution in this matter.

responded that production of this information would not violate such privileges.

In evaluating whether there was a potential attorney-client privilege violation, this Court held that "it is impossible for this Court to determine whether any privilege applies when [the school] has failed to identify or describe any such documents that may be protected." *Id*. at 1062. This Court went on to state the following.

> In the instant case, we do not … have a situation where there is a privilege log, let alone any indication or analysis on the part of the trial court with regard to documents that [the school] deemed protected by the attorney-client privilege and work product doctrine. We remind [the school] that, as the party invoking these privileges, it must initially "set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, *e.g.*, because the privilege has been waived or because some exception applies." **Nationwide Mut. Ins. Co. v. Fleming**, 924 A.2d 1259, 1266 (Pa. Super. 2007) (citations omitted). Accordingly, "[i]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege." *Id*. at 1267. If, upon remand, [the school] is able to identify certain materials encompassed in the discovery request that are subject to the attorney-client privilege or work product doctrine, then the trial court will be able to assess whether those materials are discoverable. We therefore remand, noting that the court may conduct *in camera* review of documents identified by [the school] to be subject to a privilege, to better analyze the privilege issues, as needed.

**T.M. v. Elwyn, Inc.**, 950 A.2d 1050, 1063 (Pa. Super. 2008). **See also**

**Gocial v. Independence Blue Cross**, 827 A.2d 1216, 1223 (Pa. Super.

2003) (holding that where there is a privilege log, it is the trial court's

responsibility to "rule on the relevance of each item … or explain why the privileges raised were inapplicable").

Applying this law to the instant case, it was Appellants' burden to assert facts establishing the applicability of attorney-client privilege. In addition, where the requests encompass more than one document, it was up to Appellants to create a privilege log to permit the trial court to rule on discoverability in the first instance. Appellants have not asserted any such facts in meeting their burden, nor have they produced a privilege log. Accordingly, we hold that Appellants have not met the jurisdictional requirements for reviewability under the collateral order doctrine.

Having established Appellants present no issues on appeal reviewable under the collateral order doctrine, we quash this appeal.[11]

Appeal quashed.

---

[11] We recognize that Appellants also filed a petition for permission to appeal pursuant to Pa.R.A.P. 1311, which was docketed in this Court at 69 WDM 2016. On August 10, 2016, this Court, in a *per curiam* order, dismissed the petition as moot. However, even if we had considered whether Appellants should have been granted permission to appeal from the order, we would have denied it for the same reasons outlined *supra*.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>4/19/2017</u>