J-E01012-20

2021 PA Super 130

HELEN FISHER AND WILLIAM FISHER, HER HUSBAND

Appellees

v.

ERIE INSURANCE EXCHANGE A/K/A ERIE

Appellant

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1597 WDA 2018

Appeal from the Order Entered October 19, 2018
In the Court of Common Pleas of Blair County
Civil Division at No: 2016 GN 298

BEFORE: PANELLA, P.J., STABILE, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., KING, J., and McCAFFERY, J.

OPINION BY STABILE, J.: **FILED: JUNE 25, 2021**

Appellant, Erie Insurance Exchange ("Erie"), appeals from the October 19, 2018 order entered in the Court of Common Pleas of Blair County directing, *inter alia*, that Erie submit claims file materials to the trial court for an *in camera* review. Erie contends the trial court erred in ordering production of materials protected by the attorney-client privilege and the work product doctrine and asserts this Court has jurisdiction to hear this appeal from a collateral order under Pa.R.A.P. 313. Following review, we quash the appeal.

A review of the record reveals that Appellee, Helen Fisher ("Helen"), allegedly sustained injuries on July 19, 2013, due to the negligence of Bobbie Jo Green ("Green"). Helen and her husband, William (collectively "the

Fishers"), filed suit against Green, alleging Green parked her truck in a bowling alley parking lot, leaving her child unattended in the vehicle. After a period of time, the truck began drifting downhill in the parking lot. Helen sustained injuries when she fell while trying to move out the path of the truck. **See** Complaint, 1/29/16, ¶¶ 6-13. Both the Fishers and Green were insured by Erie.[1]

The Fishers also asserted an underinsured motorists ("UIM") claim against Erie. By letter dated August 24, 2015, Erie advised the Fishers' counsel that the UIM file had been forwarded "to assist Erie in the liability investigation and damage evaluation. . . . Specifically Arthur J. Leonard of Robb, Leonard & Mulvihill has been assigned." **See** Appellees' Response to Rule to Show Cause, 12/19/18, at Exhibit A. The Fishers' counsel received a letter dated September 3, 2015 from Arthur J. Leonard, Esquire ("Leonard"), of Robb Leonard Mulvihill, LLP, indicating in part, "I have been requested by [Erie] to assist in the investigation and evaluation of the [UIM] claim that you have presented on behalf of your clients, Helen and William Fisher." **Id.** at Exhibit B. In his letter, Leonard advised the Fishers' counsel that he was seeking additional documentation relating to Helen's injuries and was interested in obtaining the documentation in advance of taking the Fishers' depositions. Leonard explained:

---

[1] According to the briefs filed by *amici curiae* (**see** n.4), the suit against Green remained unresolved at least as late as December 10, 2019.

> The purpose of this examination and securement of these records is to assist in aiding Erie in the evaluation of your client's claim for both liability and damage.  The purpose of the examination under oath is to investigate the happening of the incident as well as to evaluate your client's condition and the affect this incident may have had on her and her husband.

***Id.***

Counsel for the Fishers did not respond to Leonard's letter.  Nearly five months later, on January 29, 2016, the Fishers filed suit against Erie, contending Green was underinsured, and alleging breach of contract and bad faith with respect to the Fishers' UIM claim.  Leonard filed pleadings on behalf of Erie as well as objections to discovery served by the Fishers.

At issue in this appeal is the trial court's October 19, 2018 directive with respect to discovery, specifically with respect to the Fishers' Request for Production #16 and Erie's response thereto.   The Fishers requested:

> 16.   A complete copy of all documentation reflecting any investigation, evaluation and/or valuation of [the Fishers'] claims for [UIM] coverage authored, prepared by or obtained by Arthur J. Leonard, Esquire and/or the law firm of Robb Leonard Mulvihill.[2]

Erie responded:

> ANSWER:  Request No. 16 is overly broad, unduly burdensome, seeks information which is irrelevant, protected by the attorney-client privilege, work-product doctrine, Pennsylvania Rule of Civil Procedure 4003.3-4003.5 and/or will not lead to the discovery of admissible evidence.

---

[2] We may refer to the documents encompassed within this request as the "claims materials."

J-E01012-20

Request for Production #16 and Response.[3]

On July 13, 2018, the trial court heard argument on Erie's objections to Request for Production #16 as well as other objections lodged by Erie. By order entered October 19, 2018, the trial court directed, "With regard to Request for Production of Documents 16, [Erie] shall submit to his court for *in camera* review the responsive information [] within twenty (20) days from receipt of the Opinion and Order." Order, 10/19/18, at 2 (some capitalization

---

[3] The attorney-client privilege is codified at 42 Pa.C.S.A. § 5928 and provides that "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." "It is well-settled that the attorney-client privilege is one of the most sacrosanct privileges that exists." ***Commonwealth v. Schultz***, 133 A.3d 294, 308 (Pa. Super. 2016).

With respect to the work product doctrine,

> [s]ubject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3. "The work product doctrine is one of the most fundamental tenets of our system of jurisprudence." ***Commonwealth v. Williams***, 86 A.3d 771, 782 (Pa. 2014) (citation omitted).

- 4 -

omitted). Addressing Request for Production #16 in its accompanying opinion, the court explained:

> [Erie] objects with identical boilerplate language that it uses in a number of other responses to the Request for Production of Documents. We find that the information requested is relevant and material to [the Fishers'] cause of actions or possibly [Erie's] affirmative defenses and do not find the term[s] used by [the Fishers] in the request to be vague or overly broad, or unduly burdensome. However, **on its face, the request may seek some, if not all, documentation/information that is protected**. [The Fishers rely] on the letter from defense counsel dated September 3, 2015 for [their] argument that Erie waived its attorney-client privilege as to Attorney Leonard and his firm's role in the investigation, valuation, and evaluation of [the Fishers' UIM] claim. While this court understands [the Fishers'] position, we decline to find that the September 3, 2015 letter automatically renders any and all documentation between [Erie] and its counsel unprivileged. **[Erie] shall submit the requested information to this court for an *in camera* review in order for this court to determine the extent that the information contained therein is privileged.** Accordingly, [Erie's] general objection is overruled and **[the Fishers'] consolidated motion to dismiss as to this request is deferred until this court conducts an *in camera* review of the information as it pertains to this request.**

Opinion, 10/19/18, at 21-22 (emphasis added) (some capitalization omitted).

This timely appeal followed. In its docketing statement filed with this Court, Erie averred the trial court's October 19, 2018 order was appealable under Pa.R.A.P. 313 as a collateral order.[4] On November 30, 2018, we issued

---

[4] Pa.R.A.P. 313 (Collateral Orders) provides:

> **(a) General rule.**--An appeal may be taken as of right from a collateral order of a trial court or other government unit.

*(Footnote Continued Next Page)*

- 5 -

a rule to show cause why the appeal should not be quashed. Erie responded,

asserting:

> The Order meets the requirements of Rule 313 and, therefore, is immediately appealable because: (1) it is collateral to the main cause of action since it may be analyzed without analyzing the central issues of the case; (2) it implicates rights too important to be denied review, i.e., the public's interest in protecting the attorney-client privilege; and (3) such important rights will be lost if review is postponed until final judgment.

Erie's Response to Rule to Show Cause, 12/13/18, at 3. With respect to the

third prong of Rule 313, Erie contends that once the information is disclosed,

confidentiality would be lost. *Id.* at 4 (citation omitted).

> The Fishers counter:

> Other than arguing the same boilerplate objections, Erie was either unable or unwilling to offer one iota of evidence or factual support for the boilerplate objections at the oral argument on July 13, 2018. The objecting party bears the burden of establishing the requested information is not relevant or discoverable. . . .

> . . . .

> Erie is unable to satisfy the third prong establishing this interlocutory order as being a collateral order. No rights or interests will be "lost" through an in camera review of the documents sought by the trial court. In fact, the exact opposite

---

**(b) Definition.**--A collateral order is an order [1] separable from and collateral to the main cause of action [2] where the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

"[W]here an order satisfies Rule 313's three-pronged test, we may exercise appellate jurisdiction where the order is not final. If the test is not met, however, and in the absence of another exception to the final order rule, we have no jurisdiction to consider an appeal of such an order." ***Rae v. Pennsylvania Funeral Directors Ass'n***, 977 A.2d 1121, 1125 (Pa. 2009).

> is true. [The trial judge's] cautious approach actually preserves privilege or work product to the extent such rights are established where an insurer has delegated the duties of investigation and evaluation to an attorney.
>
> There is no other method to determine whether the investigation and evaluation documents are subject to privilege or work product. If the trial court does not review the investigation and evaluation documents sought then who is going to complete this duty?

Fishers' Response to Rule to Show Cause, 12/19/18, at 2-3 (unnumbered) (citation omitted).

By order of December 20, 2018, we discharged the rule and permitted the appeal to proceed, subject to the assigned panel revisiting the appealability issue. A briefing schedule was established and the parties filed their briefs accordingly.

In the interim, the trial court issued a Rule 1925(a) opinion. Although the October 19, 2018 Opinion and Order addressed numerous objections to the Fishers' discovery requests, Erie's Rule 1925(b) statement was limited to the court's ruling with respect to Request for Production #16. Addressing this error asserted in the Rule 1925(b) statement, the trial court stated:

> With regard to Request Number 16, [the Fishers] argued that it did not seek mental impressions or trial strategy of attorney-client privileged or work product materials, but rather was based upon the pre-complaint letters from Erie and Attorney Leonard, which state that Attorney Leonard had been assigned by Erie to assist with the liability investigation and damage evaluation. At the July 13, 2018 hearing, Attorney Leonard argued the general objections and that the letter, as clearly authored by him, protected disclosure.

On October 19, 2018, we entered an Opinion and Order determining, among other matters, that the court would conduct an in-camera review of those items requested pursuant to [Request for Production #16]. [Erie] filed a timely appeal on November 8, 2018. We entered an Order on November 9, 2018, [directing Erie to file a Rule 1925(b) statement. Erie timely complied, listing six alleged errors.]

We have reviewed [Erie's Rule 1925(b) statement] and note that all claims of alleged error involved the court's ruling relative to [Request for Production #16]. Further, we note that [Erie] incorrectly asserts that we *granted* [the Fishers'] Consolidated Motion and that said *granting* required production *to* [*the Fishers*]. In fact, not only did we not order disclosure to [the Fishers], this court exercised its discretion to defer ruling pending an in-camera review by the court. Pennsylvania courts conduct an in-camera review, among other possible methods, in order to preserve attorney privileged material. The purpose of in camera review is to determine whether such documents are what the objecting party claims and that the claimed privilege exists.

Rule 1925 Opinion, 1/3/19, at 2-3 (unnumbered) (emphasis in original)

(citations and some capitalization omitted).

In its brief, Erie asks us to consider the following:

I.      These errors are immediately appealable under Pennsylvania Rule of Appellate Procedure 313.

II.     Whether the trial court erred in ordering the production of privileged materials protected by the attorney-client privilege for an *in camera* review.

III.    Whether the trial court erred in ordering the production of privileged materials protected by the work product doctrine for an *in camera* review.

IV.     Whether the trial court erred in finding that [Erie's] objections were general objections.

Appellant's Brief at 4.

A panel of this Court heard argument on June 18, 2019. Following argument, the panel requested certification for *en banc* review to consider whether decisions from this Court cited by the parties in their briefs were in conflict as to whether an order directing *in camera* review is appealable as a collateral order under Rule 313 or whether such an order is interlocutory and not yet ripe for appeal.

By order entered September 16, 2019, the Court announced the case would be considered by the Court sitting *en banc*, and ordered the parties to file either a supplemental or a substituted brief addressing the following issue:

> Whether: (1) a conflict exists between this Court's line of cases, cited by the parties in their original briefs, regarding *in camera* review of the documents Appellant claims are protected by attorney-client privilege; and (2) if a conflict exists, which line of cases should the *en banc* Panel adopt?

Order, 9/16/19, at 2 (unnumbered). Both parties filed supplemental briefs,[5] and the case was argued before an *en banc* panel of this Court.

Erie's first issue asserts that the trial court's October 19, 2018 order is immediately appealable. "Whether an order is appealable under the collateral order doctrine under Pa.R.A.P. 313 is a question of law, subject to a *de novo* standard of review, and the scope of review is plenary." **Shearer v. Hafer**, 177 A.3d 850, 855 (Pa. 2018). Further:

---

[5] In addition to the parties' supplemental briefs, *amicus curiae* briefs were filed by The Pennsylvania Defense Institute in support of Erie and The Pennsylvania Association of Justice in support of the Fishers.

"[We] construe the collateral order doctrine narrowly, and insist that each one of its three prongs be "clearly present" before collateral appellate review is allowed.  Indeed, "[w]e construe the collateral order doctrine narrowly so as to avoid 'undue corrosion of the final order rule,' . . .  and to prevent delay resulting from 'piecemeal review of trial court decisions.'"  ***K.C. v. L.A.***, 633 Pa. 722, 128 A.3d 774, 778 (2015) (quoting ***Pridgen v. Parker Hannifin Corp.***, 588 Pa. 405, 905 A.2d 422, 427 (2006)).  As colorfully explained by then-Justice, later Chief Justice, Henry X. O'Brien, "[i]t is more important to prevent the chaos inherent in bifurcated, trifurcated, and multifurcated appeals than it is to correct each mistake of a trial court the moment it occurs." ***Calabrese v. Collier Township Municipal Authority***, 432 Pa. 360, 248 A.2d 236, 238 (1968) (O'Brien, J., dissenting).  Moreover, as parties may seek allowance of appeal from an interlocutory order by permission, we have concluded that that discretionary process would be undermined by an overly permissive interpretation of Rule 313.  ***Geneviva*** [***v. Frisk***, 725 A.2d 1209, 1214 n.5 (Pa. 1999)].

***Id.*** at 858 (some citations omitted).

As this Court observed in ***McIlmail v. Archdiocese of Pittsburgh***, 189

A.3d 1100 (Pa. Super. 2018):

Generally, discovery orders are deemed interlocutory and not immediately appealable, because they do not dispose of the litigation.  On the other hand, discovery orders requiring disclosure of privileged materials generally are appealable under Rule 313 where the issue of privilege is separable from the underlying issue.  This is because if immediate appellate review is not granted, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot.  ***See Rhodes v. USAA Cas. Ins. Co.***, 21 A.3d 1253, 1258 (Pa. Super. 2011); ***Dibble v. Penn State Geisinger Clinic, Inc.***, 806 A.2d 866, 870 (Pa. Super. 2002) ("[T]here is no question that if the documents which have been disclosed are in turn disseminated . . . appellate review of the issue will be moot because such dissemination cannot be undone.")

***Id.*** at 1104-05.

In this appeal, we accept that the first two prongs of the collateral order doctrine are satisfied and, therefore, focus on the third prong of the collateral order rule, *i.e.*, whether Erie's claims of attorney-client privilege and work doctrine protections (the "protected claims") will be irreparably lost if review is postponed until final judgment. Examining this third prong not only will decide Erie's first issue whether the order for *in* camera review is appealable, but also Erie's second and third issues as to whether the trial court erred in ordering *in camera* review to determine if any of the requested documents are protected from disclosure under any applicable privilege.[6] This is so because we first must determine if an *in camera* review is permissible before we can decide whether the appealed order is subject to collateral review.

On its face, Request for Production #16 certainly suggests the Fishers seek the production of attorney-client privilege and attorney work product documents (the "privileged materials"). Erie objected to production of these materials as expected. Fishers filed a motion to compel discovery that was argued before the trial court. Erie produced a privilege log, discussed in more detail, *infra*, for the trial court's review. The Fishers argue that the September

---

[6] The work product doctrine is not a privilege, but rather a rule embodied in Pa.R.Civ.P. 4003.3. It is not uncommon however, to see the doctrine also referred to as a privilege. *See Gillard v. AIG Insurance Company,* 15 A.3d 44, 55 n.16 (Pa. 2011); *Gocial v. Independence Blue Shield,* 827 A.2d 1216, 1222 (Pa. Super. 2003) (referring both to the work-product doctrine and work-product privilege). For convenience, we shall refer to both the attorney-client privilege and the work product doctrine as "privileges" in the context of this Opinion when we intend to refer to both at the same time.

3, 2015 letter confirms Erie did not retain Mr. Leonard as counsel for legal advice or counseling, or in anticipation of litigation. Appellees Supplemental Brief at 2. Instead, the Fishers contend, citing 31 Pa. Code § 146.6,[7] the letter proves that Erie delegated its evaluation and investigative duties to Mr. Leonard, thus rendering the claimed materials discoverable. Finding itself unable to resolve the protected claims, the trial court entered its order directing counsel to produce the objected-to materials for an *in camera* inspection.

The party asserting privilege against discovery of requested materials bears the burden of proof of demonstrating that the materials are protected from disclosure. As this Court explained in **Yocabet v. Presbyterian**, 119 A.3d 1012 (Pa. Super. 2015):

> The "party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked[.]" **Red Vision Systems, Inc. v. National Real Estate Information Services, L.P.**, 108 A.3d 54, 62 (Pa. Super. 2015) (attorney-client privilege); **accord In re T.B.**, 75 A.3d 485 (Pa. Super. 2013) (statutory privilege applicable to communications to psychiatrist and psychologists). Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or

---

[7] 31 Pa. Code § 146.6 provides: "Every insurer shall complete investigation of a claim within 30 days after notification of claim, unless the investigation cannot reasonably be completed with the time. If the investigation cannot be completed within 30 days, and every 45 days thereafter, the insurer shall provide the claimant with a reasonable written explanation for the delay and state when a decision on the claim may be expected."

because an exception to the privilege applies. **Red Vision Systems, Inc., supra**; **In re T.B., supra**.

**Id.**, 119 A.3d at 1019. "[I]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege." **Ignelzi v. Ogg, Cordes, Murphy and Ignelzi, LLP**, 160 A.3d 805, 813 (Pa. Super. 2017) (quoting **T.M. v. Elwyn**, 950 A.2d 1050, 1063 (Pa. Super. 2008) (internal quotations, alterations, and citations omitted)).

In support of Erie's assertion of attorney-client and work product doctrine privileges, Erie submitted a privilege log[8] to the trial court. However, the log simply lists numbers of documents, the subject of the document, and the privilege basis, all in cursory fashion. For instance, subjects of documents include "Strategy/tactics," "Attorney client privilege," or "Value/merit" and the

_____

[8] When responding to written interrogatories or document production requests, our rules do not *per se* require the production of a privilege log when a responding party asserts privilege as a basis to object to production. **See** Pa.R.Civ.P. 4006 and 4009.12, respectively. Nonetheless, as stated, when privilege is asserted, the responding party bears the burden of proving the materials are protected from disclosure. The preparation of a privilege log provides an acceptable format in which to identify documents, the applicable privilege, and the reason for the privilege claimed. In fact, it now is customary for a requesting party to provide written instructions in a discovery request for the production of a privilege log when claims of privilege are asserted as a basis for objection. **See Meyer-Chatfield Corp. v. Bank Financial Services Group et al.,** 143 A.3d 930, 937-38 (Pa. Super. 2016) (failure to produce privilege log prevented review of privilege; failure was not fatal to the appeal; remand ordered for log production to permit *in camera* court review).

privilege basis is simply "MI" ("mental impressions, conclusion or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics") or "AC" (attorney client privilege). *See* Privilege Log, R. 75a-77a. As the Fishers contend:

> This privilege log offered no value to help determine the veracity of Erie's claims of privilege or work-product.
>
> Erie's log does not identify which of the seventeen requests the arbitrarily withheld documents would apply [*sic*]. Erie's log does not identify any author of the documentation. The log does not identify the recipient of the documentation being withheld. This log does not even identify the dates of any of the documents withheld.

Appellees' Supplemental Brief at 3-4. Erie had the burden of setting forth facts to demonstrate its claims materials were not subject to disclosure. We agree that the trial court acted appropriately and conclude that under these circumstances the ordering of an *in camera* review is well supported by our case law. While Erie produced a privilege log, Erie did not provide enough useful information in the log to enable the trial court to rule on the relevance of the items listed or explain why privileges raised were applicable. Therefore, Erie failed to meet its burden to assert facts establishing either an attorney-client or a work product privilege with respect to any of the documents at issue. In other words, as the party claiming privilege, Erie did not produce sufficient facts to demonstrate that the privilege was properly invoked. *Ignelzi*, 160 A.3d at 813. Therefore, the burden of proof never shifted to the Fishers. *Id.* Nonetheless, Erie did make some showing, albeit incomplete,

- 14 -

that the requested materials may be protected. The trial court recognized that some of the documents at issue "may" be privileged. However, because the court could not ascertain whether they were protected by the attorney-client privilege or the work product doctrine, it did not order production of any of the documents responsive to Request for Production #16. Instead, the court ordered an *in camera* review to consider whether the documents were privileged, while appropriately reserving ruling on the Fishers' motion to compel. We agree the trial court acted appropriately and well within its discretion to order an *in* camera review. Our case law supports this conclusion.

> As this Court recently observed:

> The privilege log is the primary source for determining whether attorney-client privilege or work-product privileges apply. Where the log alone does not permit meaningful analysis of the underlying claim or the scope of the asserted privilege, *in camera* review is available. **See** Pa.R.C.P. 4003.3. As we acknowledged in **Berg v. Nationwide Mutual Ins. Co.**, 44 A.3d 1164, 1179 (Pa. Super. 2012), "[*i*]n camera review is a valuable tool for determining the validity of privilege claims, and in many instances, it is difficult to make an informed decision regarding privilege without such an inspection."

**CCL Academy Inc. v. Academy House Council**, 231 A.3d 884, 889 (Pa. Super. 2020) (footnote omitted).

In **Ignelzi**, the trial court ordered an *in camera* review to determine whether the requested documents were, in fact, privileged. In that case, Ignelzi was elected to the common pleas bench. Ignelzi filed suit after he and his former law partners were unable to negotiate a settlement determining

the amount the former partners would pay him for his partnership share of contingent fee cases that concluded after dissolution of the partnership. Ignelzi served discovery requests seeking, *inter alia*, client lists for all claims or cases the partnership accepted, or began to review for acceptance, as of the date the partnership was dissolved, along with bookkeepers' summaries for the four years leading up to that date. The trial court ordered that the documents be produced. The Court in *Ignelzi* looked to *T.M.* in considering whether there was a potential attorney-client privilege violation if the requested records were produced. We recognized that in *T.M.*, we held that "it is impossible for this Court to determine whether any privilege applies when the [school] has failed to identify or describe any such documents that may be protected." *Id.*, 160 A.3d at 813 (quoting *T.M.*, 950 A.2d at 1062). As explained in *T.M.*:

> In the instant case, we do not . . . have a situation where there is a privilege log, let alone any indication or analysis on the part of the trial court with regard to documents that [the school] deemed protected by the attorney-client privilege and work product doctrine. We remind [the school] that, as the party invoking these privileges, it must initially "set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, *e.g.*, because the privilege has been waived or because some exception applies." *Nationwide Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1266 (Pa. Super. 2007) (citations omitted). Accordingly, "[i]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege." *Id.* at 1267. If, upon remand, [the school] is able to identify certain materials encompassed in the discovery request that are subject to the attorney-client

- 16 -

privilege or work product doctrine, then the trial court will be able to assess whether those materials are discoverable. We therefore remand, noting that the court may conduct *in camera* review of documents identified by [the school] to be subject to a privilege, to better analyze the privilege issues, as needed.

***Id.*** 950 A.2d at 1063.

Mindful of our analysis in ***T.M.***, in ***Ignelzi*** we explained:

Applying this law to the instant case, it was Appellants' burden to assert facts establishing the applicability of attorney-client privilege. In addition, where the requests encompass more than one document, it was up to Appellants to create a privilege log to permit the trial court to rule on discoverability in the first instance. Appellants have not asserted any such facts in meeting their burden, nor have they produced a privilege log.

***Ignelzi***, 160 A.3d at 813-14.

Also instructive in this regard is ***Gocial, supra***. In ***Gocial***, we held that if there is a privilege log, it is the trial court's responsibility to "rule on the relevance of each item . . . or explain why the privileges raised were inapplicable." ***Id.***, 827 A.2d at 1223. While we agreed the defendants were entitled to discovery to establish a conflict under Pa.R.C.P. 1709 (relating to class actions), we were unable to determine whether and to what extent claimed privileges might apply based on the record before the Court. We concluded a remand was necessary "so that the trial court may issue a ruling with respect to each document actually sought by the defendants. **In some instances, *in camera* review may be required**." ***Id.*** at 1223 (emphasis added).

In arguing that the requested documents are not subject to *in camera* review, Erie principally relies upon this Court's decision in ***Farrell v. Regola***, 150 A.3d 87 (Pa. Super. 1995), wherein we stated, "If materials are privileged, no one, not even a trial judge, may have access to them." ***Id.*** at 95. In ***Farrell***, we were tasked with reviewing whether the psychiatrist/psychologist-patient privilege applied to mental health counseling sessions, including sessions with a psychologist and clinical social worker, and whether the attorney-client privilege covered notes taken by a client during criminal and civil proceedings.

In ***Farrell***, Appellee J. Douglas Farrell, as administrator of the Estate of Louis J. Farrell, deceased, instituted a wrongful death and survival action on behalf of himself and other unnamed heirs, including his wife, arising out of the suicide of his son, Louis, committed with gun taken from the Regolas' home. He averred that the negligence of Mr. and Mrs. Regola was the proximate cause of the death of Louis, age fourteen. In connection with the suicide, Mr. Regola was charged, *inter alia*, with permitting a minor to possess the gun. In discovery, the Regolas were asked if they sought any medical care, including any mental health care, relating to the subject of the suit. The request also asked for copies of all records relating to the response. In addition, Mr. Farrell sought handwritten notes taken by Mr. Regola during his criminal trial and during depositions in the civil law suit. The Regolas objected to these requests based upon privilege. In response to a court order entered

after hearing on a motion to compel, Mrs. Regola filed two detailed privilege logs setting forth the dates and nature of the documents she received. The first privilege log pertained to materials authored by a psychological services provider and included notes from a May 19, 2007 clinical interview and June 1, 2007 progress notes. Mrs. Regola asserted that the materials were privileged under the psychiatrist/psychologist-patient privilege. The second privilege log contained documents authored by a licensed clinical social worker. The documents included notes from a treatment session, a letter to Mrs. Regola's primary care physician discussing information that she gave during a treatment session, an evaluation containing information provided by her during the session, and a letter transmitting her records to her. Mr. Regola complied with the order by filing a supplemental privilege log. In the log, he asserted that the attorney-client privilege had not been waived, explaining that he was a client of Attorney Arthur J. Leonard, who represented the Regolas in Mr. Farrell's lawsuit. The log continued that the notes were communicated only to Attorney Leonard, that they related to the deposition in question, and that the notes were communicated to Attorney Leonard to secure assistance in the ongoing legal matter. After review, the trial court indicated that it intended to disseminate to Mr. Farrell anything said by the Regolas if the communications related to the events surrounding Louis' death.

This Court accepted the matter as a collateral appeal and reversed the trial court. We concluded the record established that the mental health

counseling provided Mrs. Regola was performed by a member of a team that included a licensed psychologist and that she had every right to believe that her communications, obtained for purposes of seeking mental health treatment, would be confidential. With respect to Mr. Regola, different counsel represented him in his criminal and civil proceedings. We held he was the client when he made the notes at his criminal trial and when he took notes during the civil depositions.[9] Both counsel were licensed members of the bar. The notes taken at the direction of the attorneys were for purposes of securing Mr. Regola's assistance in defending him in the lawsuits in question and were given only to those lawyers. The privilege was never waived and, instead, had been continually asserted therein. We were able to make these determinations, since the privilege logs were clear and unequivocal. We reaffirmed that notes taken by a client in a lawsuit at the lawyer's behest and given to the attorney so that the attorney can help defend the client in the suit are absolutely privileged. *Farrell*, 150 A.3d at 102.

The fact that the requests made and the privilege logs produced in *Farrell* so clearly invoked privilege, places in context this Court's statement that if materials are privileged, no one, not even a judge, may have access to them. The requests on their face clearly asked for privileged documents.

---

[9] Even though the request for production of documents was limited to matters pertaining to Mr. Regola's criminal trial, the trial court's order also discussed whether Mr. Regola had to produce notes that he took during civil depositions conducted in the lawsuit.

Counsel's response and privilege logs were precise enough to leave no question as to the applicability of privilege. The respective burdens of proof were satisfied to make any *in camera* review unnecessary. In fact, it would have been error for the trial court to conduct an *in camera* review, as there was no need to review documents, and therefore invade privilege, to determine if documents were privileged, given the requests and responses thereto. Discovery requests were made and privilege objections were asserted. Defense counsel met the burden of proof of establishing the privileged nature of the requested documents through the precise detail on the privilege logs. The burden then shifted to requesting counsel to come forth with reasons why privilege should not apply. He did not do so, thus leaving the question of privilege to be determined as a matter of law by the trial court. *Farrell*, therefore, is easily distinguishable from the instant appeal. Here, the scope of the request made and the trial court's inability to decide the applicability of the privileges claimed, based upon defense counsel's inadequate privilege logs, requires an *in camera* inspection to determine discoverability of the requested documents. Unlike in *Farrell*, the September 3, 2015 letter here created a factual issue as to disclosure not satisfactorily addressed by Erie's response to the requests. Thus, the trial court could not determine whether any of the claims materials were subject to disclosure without an *in* camera hearing.

The balancing of competing interests reflected in our case law, which seeks to protect privilege while not denying access to discoverable materials when deciding the appropriateness of an *in* camera inspection, also finds support in decisional law from our United States Supreme Court.

In ***United States v. Zolin***, 491 U.S. 554 (1989), a case we find persuasive, the high Court concluded that a complete prohibition against an opponent's use of *in camera* review to establish the applicability of the crime-fraud exception to the attorney-client privilege was inconsistent with the policies underlying the privilege. In that case, the IRS petitioned a federal district court to enforce a summons it served demanding production of documents, including two tapes, in conjunction with a pending suit. Interveners responded, opposing production of the materials claiming that the attorney-client privilege barred the disclosure. The IRS argued that the tapes fell within the exception to the attorney-client privilege based upon the crime-fraud exception. It included with its response a declaration by a special agent that contained partial tape transcripts the IRS lawfully had obtained. In concluding that an *in camera* inspection was warranted, the Court, relying upon the federal common law of privileges, first observed that disclosure of allegedly privileged material to a court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege. ***Id.*** at 568. The question of the propriety of an inspection then turned on whether the policies underlying the privilege and its exceptions were

better fostered by permitting review or by prohibiting it. In the Court's opinion, the costs of imposing an absolute bar to *in camera* inspection to consider the crime-fraud exception were intolerably high. The Court observed that "no matter how high the burden of proof which confronts the party claiming the exception, there are many blatant abuses of privilege which cannot be substantiated by extrinsic evidence." *Id.* at 569. Regardless, the Court observed that examination, even by a judge alone in chambers, might in some cases jeopardize the security that the privilege is meant to protect. *Id.* at 570. The Court acknowledged concerns that too much judicial inquiry into a claim of privilege would force disclosure of the thing the privilege was meant to protect, while a complete abandonment of judicial control would lead to intolerable abuses. *Id.* at 570-571. A *per se* rule that communications in question may never be considered creates too great an impediment to the proper functioning of the adversarial process. *Id.* at 571.

With those precepts in mind, the Court turned to the question of whether *in camera* review is always permissible, or whether the party seeking such review must first make some threshold showing that the review is appropriate. In fashioning a standard governing *in camera* review, the Court noted that an *in camera* inspection is a smaller intrusion upon the confidentiality of the attorney-client relationship than public disclosure and, therefore, a lesser evidentiary showing is needed to trigger *in camera* review than what would be required to overcome the privilege. *Id.* at 572. The Court then announced,

that to strike a correct balance before engaging in an *in camera* review to determine the applicability of an exception to privilege, a judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of materials may reveal evidence to establish the claim that an exception applies. ***Id.*** Once that showing is made, the decision whether to engage in an *in camera* review then rests in the sound discretion of the court. ***Id.*** Although not stated by the Court, it naturally follows that if a good faith factual basis to support an *in camera* review is lacking, then an *in camera* inspection would be inappropriate and unnecessarily intrude upon privilege. Our Pennsylvania law that shifts the burden of proof between the party asserting privilege and the party seeking disclosure, who must set forth facts showing disclosure should be compelled, is consonant with the balancing standard announced by our United States Supreme Court.

We therefore clarify and reaffirm our decisional law that holds when a request has been made that on its face seeks protected materials, and the responding party clearly sets forth facts that leave no doubt as to the applicability of any privilege, *in camera* review is not permitted and doing so would violate privilege. ***Farrell***. Where, however, the request made and the assertion of privilege by the responding party and/or the proofs offered by the requesting party render a court unable to determine an issue of privilege, an *in camera* examination is appropriate and fully supported by our case law.

***Gocial, Ignelzi, T.M.*** This approach strikes an appropriate balance between preserving privilege and protecting a party's right to discoverable material.

We therefore concur with the parties' assertions that no conflict exists in our case law regarding *in camera* review of documents, as explained by our discussion of the above-cited authorities. Rather, the divergence of views here regarding the propriety of an *in camera* inspection centers around the parties' disagreement on whether the present record is sufficient to decide the questions of privilege without an *in camera* review. For the reasons stated, we have concluded that the request made, and Erie's responses thereto, did not enable the trial court to decide whether any of the requested documents were subject to privilege. Therefore, an *in camera* inspection was appropriately ordered.

Having determined that the current discovery dispute is amenable to an *in camera* inspection, we now address whether the subject order is appealable under the collateral order doctrine. Boiled to its essence, what presents before us is an appeal from an interlocutory order that has not compelled production of protected documents, but one that at this juncture has only ordered an *in camera* review. We have already accepted for purposes of review that the first and second prongs of the collateral order doctrine, as reflected in Pa.R.A.P. 313, are satisfied; the issue is separable from the main cause of action, and the issue is too important to be denied review. We now address

the third and final prong to determine if Erie's right to non-disclosure of protected documents will be lost if left for review until final judgment.

We emphasize that what is before us is an order directing production of documents for *in camera* review and not one ordering production of documents to a requesting party, where disclosure would irreparably destroy privilege if documents were ordered to be produced in error. Since we have concluded that an *in camera* inspection is appropriate here, Erie has not lost its right to contest the ordered production of any claims materials if so ordered by the trial court after inspection, but before production. Unlike **Farrell**, the trial court at present has not suggested it will disseminate any information to the Fishers.[10] Accordingly, the order properly directing *in camera* inspection fails to satisfy the third prong of the collateral order test and, therefore, we do not possess jurisdiction to hear this appeal. **See Rae, supra**, 977 A.2d at 1125 (if the three-pronged "test is not met, and in the absence of another exception to the final order rule, we have no jurisdiction to consider an appeal of such an order").[11]

_____

[10] We specifically disapprove of a court itself producing documents to any party after an *in camera* review, since doing so *may* deprive the affected party of any continuing right to contest production and cause irreparable harm to the party claiming privilege.

[11] We observe, but do not herein decide, that in the event Erie is ordered, *after* an *in camera* inspection, to produce documents it believes are protected by the attorney-client privilege or the work product doctrine, Erie may at that time again seek to appeal the production order as collateral.

The effect of our holding today on whether an order directing *in camera* review is subject to immediate collateral appeal under Rule 313 is twofold. Where a record is clear that privilege properly has been invoked and any evidence of a requesting party has not refuted this showing, *in camera* review, which would invade privilege, is inappropriate and the threat of disclosure under those circumstances may justify immediate collateral review. Where, however, privilege has been asserted but facts have been presented that an exception to privilege may apply, a court in its discretion may order *in camera* review of the disputed materials. The order would not qualify for immediate collateral review, since the party asserting privilege would not have lost the ability to challenge disclosure until a final judgment. The circumstances justifying *in camera* review would not render the order directing *in camera* review immediately appealable as a collateral order. In the event disclosure is ordered after an *in camera* review, the party asserting privilege may at that time seek collateral review, since the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot.

Appeal quashed.[12]

---

[12] In its last issue, Erie argues the trial court erred by characterizing Erie's objections as general, since it properly invoked the privileges. In light of our disposition addressing the privileges, we need not address this last issue to which Erie devotes less than a single page of argument in its principal brief to this Court.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  06/25/2021