J-S21023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THE ESTATE OF GABRIELLA DEVINE BY AND THROUGH ERICKA CRUZ-DEVINE IN HER CAPACITY AS ADMINISTRATRIX OF THE ESTATE OF GABRIELLA DEVINE AND ON BEHALF OF WRONGFUL DEATH BENEFICIARIES OF GABRIELLA DEVINE | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | No. 2444 EDA 2024 |
| v. | : : : | |
| THE CHILDREN'S HOSPITAL OF PHILADELPHIA | : : : | |
| Appellant | : | |

Appeal from the Order Entered September 6, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  230501156

BEFORE:   KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 21, 2025**

Appellant, the Children's Hospital of Philadelphia, appeals from the order

entered in the Philadelphia County Court of Common Pleas, which granted the

discovery motion of the Estate of Gabriella Devine by and through Ericka Cruz-

Devine in her capacity as administratrix of the Estate of Gabriella Devine and

on behalf of wrongful death beneficiaries of Gabriella Devine ("Gabriella")

(collectively, "Appellees").  For the following reasons, we vacate the order and

_____

[*] Retired Senior Judge assigned to the Superior Court.

remand to the trial court for further proceedings.

The relevant facts and procedural history of this case are as follows. On May 10, 2023, Appellees filed a wrongful death and survival action against Appellant, in connection with a biopsy that Gabriella underwent as part of her treatment for Acute Myelogenous Lukemia, which Appellees allege caused Gabriella's death. Appellees filed an amended complaint on July 5, 2023. After the trial court overruled Appellant's preliminary objections to the amended complaint, Appellant filed its answer on November 15, 2023.

On June 13, 2023, Appellees filed their first set of interrogatories, which included, *inter alia*, interrogatory #29, requesting information about any investigation into the cause of the injuries claimed by the Estate, and interrogatory #32, requesting information concerning investigation into the examination and treatment of Gabriella. (**See** Appellees' First Set of Integrated Interrogatories, dated 6/13/23, at 16).[1] On February 14, 2024,

---

[1] Interrogatory #29 states:

> 29. Have you or anyone to your knowledge conducted an investigation into the cause of the injuries claimed by the Estate of [Gabriella] in this action? If so, please state:
>
> a. The date(s) of each investigation;
>
> b. The individual(s) who conducted each investigation;
>
> c. The identity of all notes, documents, data and records pertaining to each investigation;

*(Footnote Continued Next Page)*

Appellees filed a motion to compel, challenging the sufficiency of Appellant's answers to various interrogatories, including the answers to interrogatories #29 and #32. Appellees did not seek to compel production of any particular document but requested generally production of any documents that were related to an investigation into the cause of the injuries (interrogatory #29.1), and those documents that were related to investigation into the examination and treatment of Gabriella (interrogatory #32.1).

_____

        d.      The findings of each investigation; and

        e.      All steps taken as a result of the findings of each investigation.

      29.1     Please provide a copy of all documents identified above

Interrogatory #32 states:

      32.      Has anyone acting on your behalf conducted any investigation into the examination and treatment of [Gabriella] which is the subject of this litigation? If so, state the following:

        a.      The name, address and employer of all persons who conducted any investigation(s);

        b.      The dates of the investigation(s); and

        c.      The dates of any reports made about the investigation(s) and the present custodian thereof.

      32.1     Please provide a copy of all documents identified above.

(Appellees' First Set of Integrated Interrogatories, dated June 13, 2023).

Appellant responded to the motion asserting that the requested information was protected by the attorney client privilege, Pennsylvania Peer Review Protection Act ("PRPA"),[2] Medical Availability and Reduction of Error Act ("MCARE Act"),[3] or any other privilege. By order dated March 12, 2024, the trial court granted the motion subject to amendment. The court entered an amended order on March 14, 2024, granting the motion in part and directing Appellant to produce a privilege log if necessary. The court specified that Appellant shall provide verified substantive supplemental responses, and documents responsive to the request for production of documents concerning several interrogatories, including interrogatory #29, but not interrogatory #32. (**See** Trial Court Order, 3/14/24).

Discovery between the parties continued and on July 27, 2024, Appellees filed a motion for sanctions alleging that Appellant was in contempt of the court's discovery order. Relevant to the instant matter, Appellees averred that, based on information disclosed during Appellant's witness depositions, Appellant had conducted an undisclosed investigation shortly after Gabriella's death—namely a morbidity, mortality and improvement conference on July 31, 2022. Appellees claimed that Appellant violated the court's discovery order by failing to provide a privilege log concerning this

_____

[2] 63 P.S. §§ 425.1-425.4.

[3] 40 P.S. §§ 1303.101-1303.910.

investigation. (*See* Motion for Sanctions, 7/27/24, at 6). Ultimately, Appellees asked the court to sanction Appellant by precluding it from offering any evidence at trial. Alternatively, Appellees asked that the court give Appellant one more opportunity to fully respond to interrogatories #29 and #32 and provide responsive documentation.

In response, Appellant contended that the morbidity, mortality and improvement conference and any documents related thereto were privileged under the PRPA. On August 26, 2024, Appellant provided a second supplemental answer and privilege log concerning interrogatories #29 and #32, among other things. Regarding interrogatory #29, Appellant claimed that "there was no root cause analysis or apparent cause analysis conducted regarding [Gabriella's] death." (Appellant's Second Supplemental Answers, 8/26/24, at 2). In response to interrogatory #32, Appellant stated:

> Answering Defendant objects to this discovery request in that it is overly broad, vague[,] unduly burdensome, and seeks information protected by the attorney/client privilege, work-product doctrine, Pennsylvania Peer Review Protection Act and/or Medical Care Availability and Reduction of Error Act, Patient Safety Act, and the Health Care Quality Improvement Act. By way of further response and without waiver of said objections, there was no root cause analysis or apparent cause analysis conducted regarding Plaintiff's death. A clinical review and Morbidity, Mortality and Improvement Conference was held by Patient Safety on July 31, 2022. By way of further response, see Privilege Log.

(*Id.*) The attached privilege log refers to a "Memorandum from Patient Safety Manager, Bridget Cei, MS, RN to Ursula Nawab, M.D., Medical Director of Patient Safety" ("Patient Safety Memorandum") and states the alleged bases

of privilege for the Patient Safety Memorandum as MCARE sections 1303.313 and 1303.311(a), the Patient Safety and Quality Improvement Act of 2005 ("PSQIA")[4] generally, and PRPA generally.[5]

On August 27, 2024, the court held a hearing on several outstanding discovery issues including Appellees' motion for sanctions. The court summarized what occurred at the hearing as follows:

> Appellees' counsel claimed that right before the hearing, Appellant's counsel listed three documents that had not been previously produced, and took the position that since the documents were for peer-review, they were not for an investigation, therefore their initial verification that no investigation was conducted was accurate. (N.T. Hearing, 8/27/24, at 5-8). Appellees' counsel stated that Appellant's counsel produced three documents; two of which were PowerPoints for the peer-review and the third was [the Patient Safety Memorandum].
>
> Appellees' counsel claimed his only concern was as to the third document because Appellant's counsel was claiming the document was privileged and sent as a "memo from one person in the Patient Safety Office to another in response to a question about investigations." (*Id.* at 7). At the hearing, Appellant's counsel claimed that their response that no investigation was conducted into the cause of decedent's death was accurate and that they later supplemented that response by stating that no investigation was conducted other than that conducted by counsel. (*Id.* at 14-17). Appellant's counsel also stated that they supplemented the response to another interrogatory about investigations that were conducted into the decedent's care and death.

_____

[4] 42 U.S.C. §§ 299b-21-26.

[5] The privilege log also concerned two PowerPoint presentations, the first prepared by Patient Safety Manager Bridget Cei, MS, RN, and the second by Patient Safety Manager Orysa Bezpalko.

> Further, Appellant's counsel represented that the supplemented response stated that "there was a mortality and morbidity conference—which is absolutely privileged. And that's why we produced a privilege log." (***Id.***) The [c]ourt, after hearing arguments[,] ordered Appellant's counsel to turn over the memo to the Appellees' counsel. (***Id.*** at 16-17). At no time during the August 27, 2024 hearing did Appellant's counsel address the issue of the memorandum between the two individuals linking the document to peer review and/or other privileges…

(Trial Court Opinion, dated 12/20/24, at 2-3) (some record citation formatting provided). After the court issued its ruling, Appellant's counsel stated that "[t]he morbidity and mortality conference and any document that flows from that is protected by the [PRPA,]" but did not provide any further explanation as to how the document was privileged. (***See*** N.T. Hearing, 8/27/24, at 17).

On September 6, 2024, the trial court entered an order directing Appellant to produce the Patient Safety Memorandum. That same day, Appellant filed a motion to reconsider, arguing that the trial court had initially only required it to produce documents related to interrogatory #29, which sought information and documentation regarding investigations into the cause of injuries alleged in the complaint. Appellant claimed that Appellees' motion for sanctions alleged that Appellant failed to provide a response to interrogatory #32, even though the court had not ordered Appellant to provide documentation concerning that interrogatory. Appellant further contended that the Patient Safety Memorandum was related to the July 31, 2022 morbidity, mortality and improvement conference, which was a privileged event under PRPA. (***See*** Motion for Reconsideration, 9/6/24, at 7-9).

On September 13, 2024, prior to the court's ruling on its motion to reconsider, Appellant filed its notice of appeal.[6] The trial court entered an order denying the motion to reconsider on October 17, 2024. Pursuant to the court's order, Appellant filed a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b) on October 21, 2024.

Appellant raises the following issue for our review:

> Whether the trial court abused its discretion and acted in a manifestly unreasonable manner by compelling production of the [Patient Safety Memorandum]—without briefing, analysis, or *in camera* review—in violation of § 425.4 of the Peer Review Protection Act, 63 P.S. §§ 425.1 *et seq*.

(Appellant's Brief at 4).

Appellant argues that the trial court erred by compelling production of the Patient Safety Memorandum without briefing, analysis, or an *in camera* review. Appellant claims that the court deprived it of an opportunity to fully litigate and brief the issue of privilege before the trial court's ruling. Appellant insists that the Patient Safety Memorandum is facially privileged under Section 4 of the PRPA, which concerns the proceedings and records of a review committee. Appellant contends that both the patient safety manager who

---

[6] "Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action." ***Berkeyheiser v. A-Plus Investigations, Inc.***, 936 A.2d 1117, 1123-24 (Pa.Super. 2007). ***See also Farrell v. Regola***, 150 A.3d 87, 95 (Pa.Super. 2016), *appeal denied*, 641 Pa. 464, 168 A.3d 1259 (2017) (holding that collateral order doctrine, as provided by Pa.R.A.P. 313 applies if appellant asserts that trial court has ordered it to produce materials that are privileged).

drafted the memo and the director of patient safety, to whom the memo was addressed, are professional healthcare providers under the PRPA.

Appellant further asserts that the trial court denied it a fair opportunity to defend its privilege claims as the Patient Safety Memorandum was first discussed as a discovery issue during the August 27, 2024 hearing, with no opportunity for briefing prior to the hearing. Appellant maintains that because it raised the appropriate allegation of privilege, the court was required to conduct a comprehensive review of the merits of Appellant's claim of privilege. For all of these reasons, Appellant concludes that the court abused its discretion by ordering it to produce the Patient Safety Memorandum, and this Court must grant relief. We agree that some relief is due.

Our standard of review of a trial court's discovery order is well settled:

> [I]n reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will.
>
> *Carlino E. Brandywine, L.P. v. Brandywine Village Associates*, 260 A.3d 179, 195-96 (Pa.Super. 2021) (citations and quotation marks omitted). However, to the extent that we are faced with questions of law, [our standard of review is *de novo* and] our scope of review is plenary. *Berkeyheiser, supra* at 1125.

*Boyle v. Main Line Health, Inc.*, ___ A.3d. ___, ____, 2025 WL 2633685 at *2 (Pa.Super. filed Sept. 10, 2025).

It is well settled that "[t]he party asserting a privilege bears the burden

of producing facts establishing proper invocation of the privilege." **Id.** (quoting **Ungurian v. Beyzman**, 232 A.3d 786, 795 (Pa.Super. 2020)). This initial burden includes identifying the documents, the applicable privilege, and the basis upon which the privilege is claimed. **Carlino, supra** at 197.

In **Fisher v. Erie Ins. Exch.**, 258 A.3d 451 (Pa.Super. 2021) (*en banc*), this Court considered when it is appropriate for a trial court to order *in camera* review to decide an issue of privilege. There, Erie submitted a privilege log concerning certain documents that listed the numbers of documents, the subject of the document, and the privilege basis for each document, all in cursory fashion. The "privilege log offered no value to help determine the veracity of Erie's claims of privilege or work-product." **Id.** at 462. This Court explained that "Erie had the burden of setting forth facts to demonstrate its claims materials were not subject to disclosure" but "did not produce sufficient facts to demonstrate that the privilege was properly invoked." **Id.**

Nevertheless, this Court explained that the trial court properly "ordered an *in camera* review to consider whether the documents were privileged, while appropriately reserving ruling on the … motion to compel" because "Erie did make some showing, albeit incomplete, that the requested materials may be protected[.]" **Id.** In so stating, this Court clarified and reaffirmed our decisional law "that holds when a request has been made that on its face seeks protected materials, and the responding party clearly sets forth facts that leave no doubt as to the applicability of any privilege, *in camera* review is not

permitted and doing so would violate privilege." ***Id.*** at 466. "Where, however, the request made and the assertion of privilege by the responding party and/or proofs offered by the requesting party render a court unable to determine an issue of privilege, an *in camera* examination is appropriate and fully supported by our case law." ***Id.*** at 466-67. "This approach strikes an appropriate balance between preserving privilege and protecting a party's right to discoverable material." ***Id.*** at 467.[7]

In other words, where a privilege log alone does not permit meaningful analysis of the underlying claim or scope of the asserted privilege "[*i*]n camera review is a valuable tool for determining the validity of privilege claims, and in many instances, it is difficult to make an informed decision regarding privilege without such an inspection." ***CCL Academy Inc. v. Academy House Council***, 231 A.3d 884, 889 (Pa.Super. 2020) (footnote omitted). ***See also Yocabet v. UPMC Presbyterian***, 119 A.3d 1012, 1029 (Pa.Super. 2015) (directing creation of privilege log and ordering that "any documents identified on said log must be reviewed *in camera* by either the trial court or the master to determine whether those materials are discoverable"); ***T.M. v. Elwyn, Inc.***, 950 A.2d 1050, 1063 (Pa.Super. 2008) (vacating discovery

_____

[7] Ultimately, the **Fisher** Court quashed the appeal, holding that it did not satisfy the collateral order doctrine because it was "an appeal from an interlocutory order that has not compelled production of protected documents, but one that at this juncture has only ordered an *in camera* review." ***Id.*** Thus, **Fisher** is procedurally different from the case at bar, where the trial court in the instant case ordered the production of documents.

order and remanding for further proceedings where trial court did not provide any indication or analysis with respect to how privileges raised were inapplicable); ***Gocial v. Indep. Blue Cross***, 827 A.2d 1216, 1223 (Pa.Super. 2003) (concluding that trial court erred where "[d]espite the existence of the privilege log, the trial court did not rule on the relevance of each item or explain why the privileges raised were inapplicable. Rather, the court simply deemed the entire log discoverable").

Instantly, Appellant claimed that the Patient Safety Memorandum was privileged under the PRPA.[8] As our Supreme Court has explained, "the PRPA is designed to foster candor and frankness in the creation and consideration of peer-review data by conferring immunity from liability, as well as confidentiality—all with the objectives of improving the quality of care, reducing mortality and morbidity, and controlling costs." ***Leadbitter v. Keystone Anesthesia Consultants, Ltd.***, 667 Pa. 704, 712, 256 A.3d 1164, 1169 (2021). "These types of protections are viewed as helpful in fostering effective peer review because of the perceived reluctance of members of the medical community to criticize their peers and take corrective action." ***Id.***

> Beyond its short-title provision, ***see*** 63 P.S. § 425.1, the PRPA has a definitional section, ***see id.*** § 425.2, and two substantive-protection provisions: an immunity-from-liability provision, ***see id.*** § 425.3 (granting immunity from civil and criminal liability to persons who provide information

---

[8] Although the privilege log asserted that the Patient Safety Memorandum was privileged under MCARE, PSQIA, and PRPA, Appellant has abandoned its assertions of MCARE or PSQIA privilege.

to review organizations), and a confidentiality-and-testimonial-privilege provision, *see id.* § 425.4.

*Id.* at 713, 256 A.3d at 1169.

Section 4 of the PRPA sets forth the evidentiary privilege, in relevant part, as follows:

> The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee….

63 P.S. § 425.4. Accordingly, under Section 4 of the PRPA, "discovery is precluded with regard to 'proceedings and records of a review committee.'" *Leadbitter, supra* at 724, 256 A.3d at 1176 (citation omitted).

The PRPA does not explicitly define "review committee," however, our Supreme Court has explained that the term "subsumes any committee that undertakes peer review." *Leadbitter, supra* at 725, 256 A.3d at 1176. *See also id.* at 725, 256 A.3d at 1177 (stating: "a committee which performs a peer-review function, although it may not be specifically entitled a 'peer review committee,' constitutes a review committee whose proceedings and records are protected under Section 4 of the act"). Thus, to discern the applicability of the PRPA privilege to a document, the trial court must determine whether the document concerns the proceedings and records of a review committee performing a peer-review function. *See id.*

Here, at the hearing on Appellees' motion for sanctions, Appellant's

counsel explained to the court that it provided a response to both interrogatories #29 and #32, and that it produced a privilege log in conjunction with its supplemental response to interrogatory #32, indicating that the mortality and morbidity conference was privileged. (*See* N.T. Sanctions Hearing, 8/27/24, at 15-16). Thereafter, the following exchange occurred:

> THE COURT: Counsel, you're playing word games with me here.
>
> [APPELLANT'S COUNSEL]: I don't believe so, Your Honor, because --
>
> THE COURT: You know, I do. And, I'm the one that matters at this point. So, I'm not going to impose sanctions but you are to turn over the memo that was referenced regarding patient safety between the two individuals. I believe that was what was requested.
>
> As I said, I'm not going to impose sanctions at this time but that's the order of the [c]ourt.
>
> [APPELLANT'S COUNSEL]: May I respond, Your Honor?
>
> THE COURT: Respond to what? I already made my order.
>
> [APPELLANT'S COUNSEL]: I understand. I would just like to put something on the record because –
>
> THE COURT: What is it you want to put on the record?
>
> [APPELLANT'S COUNSEL]: The morbidity and mortality conference and any document that flows from that is protected by the Peer-Review Protection Act. And, this is indicated in the supplemental response.
>
> THE COURT: Well, Counsel, as I said earlier,

- 14 -

you're playing word games with me in terms of investigation versus peer review.

I'm determining that it was part of an investigation. I'm ordering you to turn over that memo that is referenced. So, that is the order of the [c]ourt. Now, you can object to that, that's fine. Whatever you need to do. But, that is the order of the [c]ourt at this point.

So, Counsel are to recraft the order consistent with what the [c]ourt has stated here.

Thank you.

(*Id.* at 16-17).

In its Rule 1925(a) opinion, the trial court elaborated on its ruling as follows:

Appellant's counsel did not produce sufficient facts or information as to how a document labeled "questions about investigations" would be subject to privilege. It appears [c]ounsel saw an opportunity to group the document with the PowerPoints from the Mortality and Morbidity conference, label it part of peer review, and hope the title would be overlooked. Lastly, counsel merely states that the document is privileged and expected the [c]ourt to take it at face value without offering facts to back up the privilege claims or that the privilege was properly invoked.

(Trial Court Opinion, dated 12/20/24, at 4).

On this record, we cannot agree with the trial court's ruling. Although Appellant did not present sufficient facts to demonstrate that the PRPA privilege applies, we conclude that the trial court abused its discretion when it ordered Appellant to disclose the Patient Safety Memorandum without first evaluating applicability of the claimed privilege. The particular facts and circumstances of this case present a unique procedural posture. Although the

parties had litigated extensively with respect to the adequacy of Appellant's responses to Appellees' first set of interrogatories, the question of production of the Patient Safety Memorandum did not arise until the document was listed in the privilege log submitted on August 26, 2024. Thereafter, the Patient Safety Memorandum was discussed by the parties and the court during the hearing on Appellees' motion for sanctions. As the hearing was the day after the initial disclosure of the Patient Safety Memorandum, there was no time for either party to develop arguments concerning whether the memorandum was privileged under any of the asserted bases, and accordingly, the trial court did not have an opportunity to make an informed decision as to whether privilege applied.

Under these circumstances, we conclude that the trial court erred in ordering disclosure without first conducting an *in camera* review of the Patient Safety Memorandum to ascertain whether the memorandum was privileged. Like in **Fisher**, Appellant "did make some showing, albeit incomplete, that the requested materials may be protected[.]" **See Fisher, supra** at 462. Without the benefit of *in camera* review, the trial court was unable to provide any indication or analysis with respect to how the asserted privileges did not apply. **See T.M., supra**; **Gocial, supra**. Accordingly, we vacate the trial court's order and remand to the trial court for *in camera* review of the Patient Safety

Memorandum.[9]

Order vacated. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/21/2025

---

[9] On May 5, 2025, Appellant filed in this Court an application to strike Appellees' brief for failure to comply with the Pennsylvania Rules of Appellate Procedure, alleging that Appellees' counter statement of the facts contains argument, and that the brief references a secondary source that was not contained in the original papers and exhibits filed in the trial court. We note that appellate briefs must materially conform to the Pennsylvania Rules of Appellate Procedure, and "[t]his [C]ourt **may** quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure." **Thompson v. Thompson**, 187 A.3d 259, 263 n.1 (Pa.Super. 2018), *aff'd*, 656 Pa. 732, 223 A.3d 1272 (2020) (citation and internal quotation marks omitted) (emphasis added). **See also** Pa.R.A.P. 2101. Here, the defects in Appellees' brief are not substantial, and this Court was able to review this case and the record without impediment. As such, we deny Appellant's application for relief and decline to strike Appellees' brief. Further, we deny Appellant's alternative request for additional time to file a reply brief as moot.