J-A25010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OTIS ADAM THOMAS III | |
| Appellant | No. 1092 MDA 2017 |

Appeal from the Judgment of Sentence imposed May 17, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0005913-2015

BEFORE:  STABILE, J., MCLAUGHLIN, J. and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:          **FILED: MARCH 10, 2022**

Appellant, Otis Adam Thomas III, appeals from his judgment of sentence of 48-96 months' imprisonment plus five years' consecutive probation for unlawful contact with a minor, indecent assault of a child, corruption of minors and endangering the welfare of children.[1]  The record indicates that the minor complainant, K.E., reported Appellant's acts to a therapist at Cornerstone Counseling, PC ("Cornerstone") in Harrisburg. Previously, we remanded this case to the trial court (while continuing to retain jurisdiction) for *in camera* review of whether Cornerstone's records are privileged under the psychiatrist-patient privilege, 42 Pa.C.S.A. § 5944, and the sexual assault counselor privilege, 42 Pa.C.S.A. § 5945.1.  On remand, the trial court concluded that some of the records were privileged and some

---

[1] 18 Pa.C.S.A. §§ 6318, 3126, 6301, and 4304, respectively.

were not, but nothing in the non-privileged records entitled Appellant to relief.

We affirm.

The trial court summarized the evidence adduced during trial as follows:

At the time of trial, K.E.[] was 14 years old and lived with her grandparents. Before moving to her grandparent[s'] home, K.E. lived with her mother, [Appellant] and her younger brother. K.E. testified that she spent most of her time in her bedroom to avoid her mother and [Appellant], her stepfather, yelling at her. She testified that family members in the household rarely spoke to each other.

K.E. recalled that the sexual contact by [Appellant] began when she was ten years old. She recalled being perplexed upon awakening one morning to find that all of her clothes had been removed. Following that incident, [Appellant] began grabbing or smacking her behind or touching her breast on top of her clothes when she passed him in the hallway of the home. [Appellant]'s sexual contact with K.E. would occur in the family room, where he would summon her by text and tell her to sit on his lap. [Appellant] removed K.E.'s clothes, touched her breasts and buttocks, and digitally penetrated her vagina. K.E. testified that [Appellant] touched her breast and vagina with his mouth. K.E. testified that [Appellant] touched her vagina with his mouth on more than one occasion, sometimes in her bedroom and sometimes in her parents' bedroom. The contact occurred daily or every other day, typically when her mother was either sleeping, in the shower or outside the home. K.E. recalled an incident which occurred while her mother was in the shower when [Appellant] had K.E. sit on his lap on her bunkbed, with his boxer shorts pulled down. K.E. lifted herself up, by hanging onto the wood rail of the bed, to attempt to avoid contact with [Appellant]'s penis. [Appellant] left the room when K.E.'s mother got out of the shower.

K.E. testified that she did not tell anyone of the abuse because she did not think anyone would believe her and because she viewed [Appellant] as a father figure from whom she wanted love. Although [Appellant] required K.E. to stay in her room most of the time, he increasingly allowed her out of her room to take her

shopping, out to eat or on his boat. [Appellant] occasionally told K.E. that he loved her.

K.E.'s mother, Laura Thomas[,] testified that in 2009, following the birth of K.E.'s brother, problems arose in the marriage. Ms. Thomas testified that she suffered postpartum depression and had difficulty caring for the children. Ms. Thomas testified that [Appellant] was rarely home to help. In 2014, Ms. Thomas learned that [Appellant] was having an affair.

In late September 2015, K.E. disclosed the abuse to a staff member at her school. Ms. Thomas received contact by either the police or Children and Youth Services. On September 29, 2015, the Lower Paxton Township Police Department received a report of child abuse and sexual assault of a victim, K.E. Police obtained authorization to conduct a one-party consent electronic intercept. With the consent of her grandmother, with whom she was living, K.E. agreed to participate. In a series of text messages, K.E. texted [Appellant] at the direction of detectives. K.E. asked [Appellant] to explain why he [had] touched her that way, to which [Appellant] responded, "I should not have done anything that made you uncomfortable. There's no explanation for it. I understand that it is hard to ask feeling this way (*sic*). I should not have done anything to make this happen. You did nothing wrong!" In another message, [Appellant] stated, "I am sorry that this happened. Cannot express that enough." [Appellant] also stated, "You're fine. Nothing will happen again. You have my word" and "I do love you and want to make this better for you. There is no explanation I can give, so I need to know how to make this better for you." The intercept concluded at 11:30 p.m. on September 30, 2015. Police arrested [Appellant] the following evening.

When questioned by police, although [Appellant] initially expressed shock at the allegations, he proceeded to make admissions. [Appellant] admitted that he touched K.E.'s breasts and buttocks on top of her clothing and that when he walked into K.E.'s room and saw her in her underwear, "it made his mind wander." [Appellant] admitted that while Ms. Thomas was in the shower, he touched K.E.'s bare breasts and vagina. He admitted to putting his mouth on K.E.'s breast and vagina and having her sit on his lap. [Appellant] told police that the touching occurred in K.E.'s bedroom or the living room while Ms. Thomas was in the shower. [Appellant] stated that K.E. was 11 years old at the time.

At one point during the interview, [Appellant] told police that he felt like he was going to be sick, that he was sorry for what he had done, and thought many times about "putting a gun in [his] mouth."

Following his arrest, [Appellant] texted Ms. Thomas to ask her to post bail for him and if they could reconcile. In those text messages, [Appellant] did not state that the abuse of which he was accused did not occur. In one text to Ms. Thomas, [Appellant] stated, referring to K.E., "she doesn't want to hurt a fly, but she wanted to get this off her shoulders."

[Appellant] testified that the admissions made to police were taken out of context and that he made them because he feared ramifications if he did not agree with them.

Trial Court Opinion, 12/19/18, at 3-6.

On November 22, 2015, Appellant was charged with committing sexual offenses against K.E. Prior to trial, Appellant filed a petition seeking Cornerstone's records relating to K.E.'s grandmother's communications with Cornerstone and all diagnoses, opinions, evaluations, observations, and treatment plans relating to K.E. In response, the Commonwealth asserted that Cornerstone's records were privileged under the psychiatrist-patient privilege under Section 5944 and the sexual assault counselor privilege under Section 5945.1. In an order dated September 29, 2016, the trial court denied Appellant's petition.

On February 13, 2017, following a three-day trial, the jury found Appellant guilty of the above-mentioned offenses and not guilty of indecent exposure, attempted rape, involuntary deviate sexual intercourse, and aggravated indecent assault. The trial court subsequently imposed sentence, and Appellant filed timely post-sentence motions challenging the weight of the

evidence and the imposition of consecutive sentences, which the court denied in an order docketed on June 7, 2017.

Appellant filed a timely notice of appeal. On July 14, 2017, the trial court ordered Appellant to file a Pa.R.A.P. 1925 statement within 21 days, but Appellant did not file a Rule 1925 statement until October 11, 2017. In the *pro se* Rule 1925 statement, Appellant argued that the court abused its discretion by denying his motion for disclosure of Cornerstone's records, denying his challenge to the weight of the evidence, and imposing consecutive sentences on Appellant's counts of conviction.

On October 16, 2017, Appellant's attorney filed a petition for leave to submit his Rule 1925 statement *nunc pro tunc*. Counsel stated that he had drafted a Rule 1925 statement but admitted that his staff failed to file it. On October 17, 2017, without ruling on the attorney's petition, the trial court issued a Rule 1925(a) opinion recommending dismissal of Appellant's appeal for lack of a timely Rule 1925(b) statement. The trial court did not address the merits of any issue in Appellant's *pro se* Rule 1925(b) statement.

On November 27, 2017, Appellant filed his brief and reproduced record in this appeal. By memorandum of September 18, 2018, we remanded with instructions for the trial court to accept Appellant's Rule 1925(b) statement *nunc pro tunc* and to file a Rule 1925(a) opinion addressing the issues in Appellant's statement.

On December 19, 2018, the trial court filed its opinion. Without reviewing the Cornerstone documents *in camera*, the court contended that it

properly denied Appellant's pretrial motion seeking their disclosure. The court also claimed that Appellant waived his challenge to the weight of the evidence due to the vagueness of his October 11, 2017 Rule 1925 statement. Finally, the court reasoned that its sentence was a proper exercise of discretion.

In his first argument on appeal, Appellant contended that the trial court erred by denying his request for disclosure of records held by Cornerstone Counseling concerning Cornerstone's communications with K.E.'s grandmother and its diagnoses, opinions, evaluations, observations, and treatment plans relating to K.E. Appellant argued that these records fell outside the scope of Pennsylvania's psychiatrist-patient privilege, 42 Pa.C.S.A. § 5944, and the sexual assault counselor privilege, 42 Pa.C.S.A. § 5945.1. On October 6, 2021, pursuant to **Fisher v. Erie Insurance Exchange**, 258 A.3d 451 (Pa. Super. 2021) (*en banc*), we remanded this case for *in camera* review by the trial court whether these records were privileged under Sections 5944 and 5945.1. **See Commonwealth v. Thomas**, —A.3d—, 2021 WL 4593819, *5-9 (Pa. Super. Oct. 6, 2021) (unpublished memorandum). Our order directed that either party could file a Rule 1925 statement within 21 days after the court's decision.

On November 29, 2021, following *in camera* review, the trial court entered detailed findings of fact and conclusions of law in which it held that most of Cornerstone's records were privileged, and that none of the non-privileged material entitled Appellant to relief.

Appellant did not file a Rule 1925(b) statement within 21 days after the court's decision. On December 29, 2021, the trial court filed a Rule 1925(a) opinion stating that neither Appellant nor the Commonwealth filed a Rule 1925 statement within 21 days, and therefore no further analysis was necessary beyond its November 29, 2021 decision. Nine days later, on January 7, 2022, Appellant filed an untimely Rule 1925(b) statement. The Rules of Appellate Procedure do not address this precise situation. The closest that the Rules come to addressing these circumstances is Rule 1925(c)(1), which provides that when an appellant in a criminal case is ordered to file a Rule 1925 statement and fails to do so, such that the appellate court is convinced that counsel has been *per se* ineffective, the appellate court shall remand the case for the filing of a Rule 1925 statement *nunc pro tunc* and the filing of an opinion by the judge. Under the present circumstances, we find a remand unnecessary, since (1) Appellant ultimately filed an untimely Rule 1925 statement, (2) the trial court filed a Rule 1925 opinion on December 29, 2021, (3) the Rule 1925 opinion incorporated by reference the court's November 29, 2021 decision on the privilege issue, and (4) the November 29, 2021 decision is sufficiently detailed to facilitate appellate review of the privilege issue. Accordingly, we will proceed to the merits of this appeal.

Appellant raises the following issues in his November 27, 2017 brief:

A. Did the trial court err by denying the defense request for an *in camera* review and the disclosure of relevant diagnoses, opinions, evaluations, observations, and treatment plans that were not confidential communications protected from disclosure by 42 Pa.C.S.A. § 5944[?]

B. Did the trial court err in denying [A]ppellant's motion for a new trial when the jury's verdict was against the weight of the evidence because the Commonwealth failed to meet its burden to sustain the alleged charges?

C. Did the trial court abuse its discretion when it imposed consecutive sentences where [A]ppellant's conduct was limited to a single incident and not so egregious as to warrant a four to eight (4-8) year sentence?

D. Did the trial court err in denying [A]ppellant's request to submit a concise statement of matters *nunc pro tunc*?[2]

Appellant's Brief at 9.

Appellant's first argument concerns whether the trial court properly denied his request for Cornerstone's records on the basis of privileges in Sections 5944 and 5945.1. "Pennsylvania law does not favor evidentiary privileges." *In re Subpoena No. 22*, 709 A.2d 385, 388 (Pa. Super. 1998). "Thus, courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Commonwealth v. Stewart*, 690 A.2d 195, 197 (Pa. 1997).

A sexual offense defendant's entitlement to an alleged victim's records held by an agency, hospital, rape crisis center or other third party depends upon the scope of any privilege that may protect the confidentiality of the victim's records. *Commonwealth v. Eck*, 605 A.2d 1248, 1251 (Pa. Super.

---

[2] This issue is moot because this Court permitted Appellant to file a Rule 1925 statement *nunc pro tunc* in its order dated September 18, 2018.

1992). In the case of statutory privileges such as Sections 5944 and 5945.1, the scope of the privilege rests upon the language of the statute. *Id.* at 1252. "Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that appellate courts are faced with questions of law, [our] scope of review is plenary." *Gormley v. Edgar*, 995 A.2d 1197, 1202 (Pa. Super. 2010).

The party asserting privilege against discovery of requested materials bears the burden of proof of demonstrating that the materials are protected from disclosure. *Fisher*, 258 A.3d at 461. The party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked. *Id.* Once the invoking party has made the appropriate proffer, the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies. *Id.* If the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, the burden never shifts to the other party, and the material is not deemed privileged. *Id.*

42 Pa.C.S.A. § 5944, the psychotherapist-patient privilege, provides:

No psychiatrist or person who has been licensed under the Act of March 23, 1972 (P.L. 136, No. 52) to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services on behalf of such client. The confidential relationship and communications between a psychologist or

psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

*Id.* The purpose of this privilege is to "protect confidential communications made and information given by the client to the psychotherapist in the course of treatment." *Farrell v. Regola*, 150 A.3d 87, 97-98 (Pa. Super. 2016); *see also Gormley v. Edgar*, 995 A.2d 1197, 1204 (Pa. Super. 2010) (privilege "aid[s] in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure").

The psychotherapist-patient privilege applies only to "information acquired in the course of [the psychiatrist's or psychologist's] professional services on behalf of [the] client." 42 Pa.C.S.A. § 5944. The privilege applies not only to communications with the therapist but also to communications with other individuals on the patient's treatment team who are not themselves psychotherapists. *Commonwealth v. Cook*, 231 A.3d 913, 922 (Pa. Super. 2020). Furthermore, under Section 5944's second sentence, any exceptions that apply to the attorney-client privilege also apply to the psychiatrist/psychologist-patient privilege. For example, any communications between the patient and the therapist are not privileged if they are made in the presence of third persons who are not part of the patient's treatment team. *Cf. Commonwealth v. Mrozek*, 657 A.2d 997, 998 (Pa. Super. 1995) (for attorney-client privilege to apply, communication must relate to facts of which attorney was informed by his client, without presence of strangers, for purpose of securing either an opinion of law, legal services, or assistance in a legal matter).

Section 5945.1, the sexual assault counselor privilege, provides in relevant part:

> (a) Definitions.- As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> "Confidential communication." All information, oral or written, transmitted between a victim of sexual assault and a sexual assault counselor in the course of their relationship, including, but not limited to, any advice, reports, statistical data, memoranda, working papers, records or the like, given or made during that relationship, including matters transmitted between the victim through the use of an interpreter.
>
> "Rape crisis center." Any office, institution or center offering assistance to victims of sexual assault and their families through crisis intervention, medical and legal accompaniment and follow-up counseling.
>
> "Sexual assault counselor." A person who is engaged in any office, institution or center defined as a rape crisis center under this section, who has undergone 40 hours of sexual assault training and is under the control of a direct services supervisor of a rape crisis center, whose primary purpose is the rendering of advice, counseling or assistance to victims of sexual assault.
>
> "Victim." A person who consults a sexual assault counselor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused or reasonably believed to be caused by a sexual assault. The term shall also include those persons who have a significant relationship with a victim of sexual assault and who seek advice, counseling or assistance from a sexual assault counselor concerning a mental, physical or emotional condition caused or reasonably believed to be caused by a sexual assault of a victim.
>
> (b) Privilege.-
>
> (1) No sexual assault counselor may, without consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding.

(2) No co-participant who is present during the counseling may disclose a victim's confidential communication made during the counseling session nor consent to be examined in any civil or criminal proceeding without the written consent of the victim.

42 Pa.C.S.A. § 5945.1.

Section 5945.1 prohibits disclosure of any "confidential oral or written communication" transmitted between the "victim of sexual assault" and a "sexual assault counselor" in the course of their relationship, absent the victim's consent. It is an absolute privilege that is not overcome even by the constitutional rights of a criminal defendant. *V.B.T. v. Family Services of Western Pennsylvania*, 705 A.2d 1325, 1329 (Pa. Super. 1998).

A "victim" is the person seeking consultation for a condition caused by, or reasonably caused by, a sexual assault. 42 Pa.C.S.A. § 5945.1(a). Notably, a "victim" also includes "those persons who have a significant relationship with a victim of sexual assault" concerning a condition caused or reasonably believed to be caused by a sexual assault of a victim. A "sexual assault counselor" is an individual who has undergone the training required under the statute and who is under the control of a direct services supervisor of a rape crisis center. *Id.* A "rape crisis center" is "any office, institution or center offering assistance to victims of sexual assault and their families through crisis intervention, medical and legal accompaniment and follow-up counseling." *Id.*

- 12 -

With this framework in place, we turn to the trial court's decision that most of the Cornerstone records sought by Appellant were privileged, and that any non-privileged documents would not have changed the outcome of trial.

The trial court first addressed whether K.E.'s grandmother's communications with Cornerstone were privileged. Appellant asserted:

> It has been brought to [Appellant's] attention that the initial disclosure of the alleged acts was made to a counselor during a therapy session on September 28, 2015 at Cornerstone Counseling, PC, 6011 Jonestown Road, Harrisburg, PA 17112 [Cornerstone]. The defense has a good faith basis to believe that statements made to the therapist in that session and the records contain prior statements of the complaining witness regarding the alleged act. These statements are believed by the defense to contain information related to the complaining witness['s] motive [to] fabricate the allegations and evidence of coaching by her mother and grandmother. Further, the defense has recently learned that the grandmother spent 4-5 hours with the counselor prior to the session on 28 September when the accusation was made.

Petition, ¶ 3. Following *in camera* review, the trial court determined that no relief was due. In particular, the court found that (1) while K.E.'s grandmother attended an initial intake meeting on September 26, 2015, it was impossible to attribute any statements to her, (2) the sole statement during the intake meeting that was tenuously attributable to K.E.'s grandmother merely concerned K.E.'s negative perception of her mother, (3) K.E.'s grandmother did not attend any other meetings at Cornerstone, and (4) there was no evidence that K.E.'s grandmother, or any other person, attempted to coach K.E. into fabricating evidence against Appellant. Findings of Fact and Conclusions of Law ("Findings"), at 3-5. The court concluded that nothing was

subject to disclosure because there was no information relevant to K.E.'s motion to fabricate or evidence of coaching. *Id.* at 5. Furthermore, the court held that even if there were any non-privileged communications by K.E.'s grandmother, Appellant did not suffer prejudice from their non-disclosure, because the other evidence of guilt was overwhelming, including K.E.'s detailed description of abuse, Appellant's apology during a telephone conversation with K.E. for touching her the way he did, his admission that he put his mouth on K.E.'s bare breasts and vagina, and his statement that he thought many times of putting a gun in his mouth. Findings at 6. We agree with the trial court's determination of no prejudice. The record confirms the trial court's conclusion that the other evidence against Appellant was overwhelming.

Appellant also sought Cornerstone records of diagnoses, opinions, evaluations, observations, and treatment plans relating to K.E. Following *in camera* review, the trial court held that all handwritten information in records from K.E.'s meetings at Cornerstone on September 28, 2015, October 15, 23, 26, and 29, 2015, and November 2 and 9, 2015 were privileged under Sections 5944 and 5945.1, because they consisted of K.E.'s statements to a psychologist and/or sexual assault counselor.[3] *Id.* at 9. The court held that certain items were not privileged, including (1) the typed portions of the records on these dates by sexual assault counselors, (2) a discharge summary

_____

[3] The court did not state whether the psychologist and sexual assault counselor were the same individual or different individuals.

- 14 -

on February 27, 2015, and (3) a November 5, 2015 meeting (because K.E.'s mother attended the meeting along with K.E. *Id.* Ultimately, however, the court ruled that Appellant did not suffer prejudice from non-disclosure of non-privileged materials, because (once again) the other evidence against Appellant was overwhelming. As we did above, we agree with the court's finding of no prejudice because the record supports its determination that the other evidence against Appellant was overwhelming.

For these reasons, we hold that Appellant's argument concerning the Cornerstone records does not entitle him to relief.

In his next argument, Appellant challenges the weight of the evidence adduced during trial. Appellant seeks a new trial on the ground that K.E.'s testimony "was so inconsistent, contradictory, confusing, and unreliable that the jury's verdict can only be said to have been based on conjecture and surmise . . ." Appellant's Brief at 33. In its December 19, 2018 opinion, the trial court contended that Appellant waived his challenge to the weight of the evidence due to the vagueness of his October 11, 2017 Rule 1925 statement. We agree.

We begin by reciting the weight of the evidence claim in Appellant's post-sentence motions. There, he stated:

> The Commonwealth rested primarily on the information provided by the complaining witness whose testimony was so inconsistent, contradictory, confusing, and unreliable that the jury's verdict can only be said to have been based on conjecture and surmise and therefore, justice should be afforded another opportunity to prevail. Further, the jury's finding that there was not a continuing course of conduct was directly inconsistent with the testimony of

- 15 -

the complaining witness further undermining the weight of the evidence.

Appellant's Post-Sentence Motions, at ¶ 14.

In his Rule 1925 statement, Appellant recited the same claim with the deletion of a phrase at the end of the first sentence:

> The Commonwealth rested primarily on the information provided by the complaining witness whose testimony was so inconsistent, contradictory, confusing, and unreliable that the jury's verdict can only be said to have been based on conjecture and further, the jury's finding that there was not a continuing course of conduct was directly inconsistent with the testimony of the complaining witness further undermining the weight of the evidence.

Appellant's Rule 1925 statement, at ¶ 1.

In his appellate brief, Appellant developed, to some extent, an argument relating to the first half of the weight claim in his Rule 1925 statement. Nothing in his brief related to the second half of his weight claim.

When a concise statement contains issues that are too vague for the trial court to ascertain the nature of the claim to be raised on appeal, this Court has found those issues waived. In *Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998), our Supreme Court held that issues not included in a Rule 1925(b) statement are deemed waived on appeal, reasoning:

> The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review. Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process.

*Id.* at 308. "When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v.*

*Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *Estate of Daubert*, 757 A.2d 962, 963 (Pa. Super. 2000). "In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Dowling*, 778 A.2d at 686.

We find that two other decisions warrant further comparison to inform our conclusion in this matter. In *Commonwealth v. Seibert*, 799 A.2d 54 (Pa. Super. 2002), the defendant's Rule 1925(b) statement "merely stated that '[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges.'" *Id.* at 62. The trial court dismissed the defendant's weight claim summarily without addressing any specific weight of the evidence issue. Based on the foregoing, this Court found the weight claim too vague to permit review, even though he raised specific reasons in his brief as to how the verdict was against the weight of the evidence. *Id.*

More recently, in *Commonwealth v. Rogers*, 250 A.3d 1209 (Pa. 2021), a rape case involving three victims, the defendant claimed in his Rule 1925(b) statement:

> The verdicts were so contrary to the weight of the evidence as to shock one's sense of justice, where [A.P.'s], [M.H.]'s and [C.B.]'s testimony was vague, inconsistent and incredible. New trials should have been granted in the interests of justice so that right may prevail, as the fact finder's verdict based upon such testimony was speculative and conjectural.

*Id.* at 1223. Our Supreme Court concluded that this statement was not too vague to permit review because the issue was "readily understandable from context" because of the detailed multi-paragraph weight claim in the defendant's post-sentence motions that delineated the flaws in each victim's testimony.[4] *Id.* at 1224.

_____

[4] The **Rogers** defendant's post-sentence motions stated in relevant part:

> 7. Petitioner contends that the testimony of [A.P.] was so contradictory and inconsistent that the verdict was against the weight of the evidence. [A.P.] gave two different accounts of how she arrived at the location where she claimed to be assaulted, two different locations where the assault occurred, two different explanations for how she sustained her injuries, and inconsistent testimony of how or when her property was lost or taken.
>
> 8. Petitioner likewise contends that the testimony of [M.H.] was against the weight of the evidence. The testimony of [M.H.] was incredible based on inconsistencies, her drug usage, and that [sic] it generally made no sense. Petitioner contends that the circumstances of how and when [M.H.] reported the incident further call her credibility into question. ...
>
> 9. Petitioner contends that the evidence presented as to [C.B.] was ... against the weight of the evidence. Petitioner concede[d] that he had consensual sexual relations with [C.B.], which he claimed was as a result of an agreement to commit prostitution, but denied beating her. During her testimony, [C.B.] maintained that she did not know her assailant and that their conversation was limited prior to the assault. It is undisputed that [C.B.] was "a little tipsy" celebrating her birthday, and lived a few blocks away from the area of the physical assault. Petitioner spoke to the police and testified that he told them her name, that it was her birthday, that she had been drinking, and that the sexual interaction happened not in an alley, but on a porch, in a location that Petitioner contends was very close to [C.B.'s] home.

*(Footnote Continued Next Page)*

The present case is more like ***Seibert*** than ***Rogers***. As in ***Seibert***, the weight claim in Appellant's Rule 1925 statement consists of generic assertions and is devoid of specific detail. Unlike ***Rogers***, Appellant's weight claim does not become readily understandable through review of his post-sentence motions, because the weight claim in Appellant's post-sentence motions is virtually identical to his Rule 1925 statement. Thus, the trial court could only guess at the contours of this claim when it authored its Rule 1925 opinion. Although Appellant later fleshed out the first sentence of his weight claim in his appellate brief, this was of no help to the trial court when it prepared its opinion. Our role as an appellate court reviewing a weight claim is to

_____

Petitioner also gave the amount of money paid to [C.B.] as $40.00, taken from the MAC machine as described by [C.B.]; this was coincidentally the amount of money [C.B.] claimed was taken. When questioned by police, Petitioner gave a statement containing all of the information about [C.B.], which he testified to at trial. Petitioner contends that the only way he could possibly have had all of that information was that he had indeed had some protracted conversation with her on the date in question.

10. Petitioner contends that the agreed upon evidence, that DNA comparisons showed the presence of DNA in a sperm fragment from an unidentified male, lends credibility to the proposition that although Petitioner engaged in sexual intercourse with [C.B.], so did another unidentified male. Petitioner contends that it was the other male who also beat [C.B.] again consistent with Petitioner's statement to the police and testimony at trial. The question of whether [C.B.] was sexually active at the time prior to the assault was initially answered differently from the trial, when the prosecution attempted to discount the unknown sperm fraction. ...

***Id.*** at 1222 (with minor revisions).

- 19 -

determine whether the trial court abused its discretion in addressing a weight claim. *See, Commonwealth v. Widmer,* 774 A.2d 745 (Pa. 2000) (appellate review of weight claim is review of exercise of discretion, not of underlying question whether verdict is against weight of the evidence). Where, as here, the trial court is disadvantaged to review a weight claim, we likewise are at a disadvantage to review the trial court's exercise of discretion. Accordingly, we conclude that Appellant waived his weight issue.

In his final argument, Appellant contends that the trial court abused its discretion in imposing consecutive sentences. According to Appellant, the court should have considered all of Appellant's crimes as a single act, since the jury found that "there was no[] continuing course of conduct." Appellant's Brief at 36. We disagree.

To reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042-43 (Pa. Super. 2014). Appellant satisfied the first three of these requirements, so we must determine whether his objection to consecutive sentences raises a substantial question.

This Court has observed:

A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

[An appellant] may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Commonwealth v. Swope*, 123 A.3d 333, 338-39 (Pa. Super. 2015) (citations and quotation marks omitted).

In this case, Appellant does not claim that he was sentenced outside the Sentencing Guidelines. Furthermore, as the Commonwealth points out, his maximum sentence of eight years' imprisonment is well within the aggregate statutory maximum of twenty-six years. Nor do we see nothing that indicates that the imposition of consecutive sentences was "clearly unreasonable" or "unduly harsh." *Id.* Thus, Appellant fails to raises a substantial question as concerning the discretionary aspects of his sentence.

Even assuming that Appellant raises a substantial question, his claim lacks substance. "[W]here the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135

(Pa. Super. 2009). The sentencing transcript reflects that the court considered Appellant's pre-sentence report along with defense counsel's arguments. Furthermore, Appellant's claim that the jury found no continuing course of conduct is misleading. The jury did not find a course of conduct on two counts, indecent assault of a child and endangering the welfare of a child. In the other two counts of conviction, unlawful contact with a minor and corruption of minors, the jury did not address whether there was a course of conduct. The evidence of record indicates that Appellant engaged in a course of conduct as to these latter offenses. Finally, the trial court properly determined that Appellant should not receive a "volume discount" by having all sentences run concurrently. Trial Ct. Op. at 14.

Based upon the deferential standard this Court must apply regarding consecutive sentences and the trial court's rationale for its sentence, we find that the trial court acted within its discretion by imposing consecutive sentences for Appellant's convictions.

Judgment of sentence affirmed.

Judge Musmanno did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/10/2022